[Civ. No. 14293. Second Dist., Div. One. Oct. 4, 1944.]

HARRY YADKOE, Respondent, v. W. C. FIELDS, Appellant.

Gang, Kopp & Tyre for Appellant.

Latham & Watkins and Henry T. Moore for Respondent.

DORAN, J.—Defendant has appealed from a judgment for $8,000 in favor of respondent, upon the verdict of a jury rendered in the court below. Plaintiff's first amended complaint, which forms the basis of this action against appellant, is stated in two counts. The pertinent allegations are as follows:

"That prior to the matters hereinafter alleged plaintiff composed, prepared and was the original author of certain literary material, consisting of a so-called 'snake story' and certain other comic gags and material suitable for use in motion picture productions and in radio broadcasts; that said literary material was submitted by plaintiff to the defendant W. C. Fields for use by him, upon payment of the reasonable value thereof, in his work as a motion picture actor and radio entertainer; that on or about September 10, 1938, said defendant acknowledged receipt by him of a portion of plaintiff's said literary material; within two (2) years last past said W. C. Fields . . . used and embodied said material in the motion picture 'You Can't Cheat an Honest Man,' featuring said W. C. Fields as an actor, and also used and embodied the same in certain radio programs or broadcasts featuring said W. C. Fields as the principal star and entertainer. That prior to the submission of said literary material to the defendant W. C. Fields, as above set forth, plaintiff had at no time transferred said material to any person, firm or corporation or granted permission for the use thereof, and plaintiff is now and at all times in this complaint referred to was the owner of said literary material and entitled to the sole use thereof."

"That the reasonable value of the literary material above referred to was $20,000; that said material was used by defendants without any payment therefor to plaintiff; that since use by defendants of said material no compensation of any kind has been paid by defendants or any of them to plaintiff; that there is now due, owing and unpaid to plaintiff from defendants and each of them the said sum of $20,000; that plaintiff has demanded said sum from said defendants, and each of them, but that said defendants have failed and refused and still fail and refuse to pay said sum or any part thereof."

There is incorporated in the second cause of action the allegations contained in the first two paragraphs of the first count, which include all the allegations above quoted, with

the exception of the paragraph last above quoted. To these incorporated allegations there is added the following: ''That no compensation for use of said literary material has been paid by defendants, or any of them, to plaintiff; that at no time did defendants, or any of them, obtain from plaintiff the right to make use of said literary material without compensation; that by reason of the matters herein alleged plaintiff has been damaged by defendants, and each of them, in the sum of $20,000.''

Appellant's demurrer to respondent's first amended complaint was overruled; and appellant's motion for a nonsuit was denied. During a discussion at the beginning of the trial, between the trial judge and counsel for both parties, as to the exact nature of the causes of action as stated in the complaint, the trial judge expressed the opinion that the entire complaint was one based upon an implied contract to pay for the reasonable value of the use of the material involved; and plaintiff's counsel agreed that that was the correct interpretation.

Respondent first communicated with appellant through a letter dated August 8, 1938, in evidence, which reads as follows:

''43 Bock Ave Aug 8th 1938
Newark N J   Newark N J

''Mr. W. C. Fields:
Dear Bill:

Enclosed find a radio script which I think suits your inimitable style of super-comedy

To say that I rate you as the greatest of comedians is putting it mildly you old rascal you.

There isn't a greater master of mimicry, buffoonery, or what have you on the stage, radio, or screen

When you open up your hocus pocus, hipper dipper, strong men weep and pay their income tax.

When I read in a daily paper that a medico tried to limit your liquid refreshment I knew the millenium was here.

Bill without his nourishment.

Egad! What next? Is there no Justice? Gazooks! Must an old Indian fighter turn squaw.

When Goofus, Gufus, Hoofus and Affadufus are allegedly doing comedy on the 'air,' your very absence and silence is 'funny'.

You 'Old Reprobate.'

When are you coming back to us over the 'ether' without an operation except on our funny bone.

Whats that?  'Bill' Cody 'Fields' has retired from the 'Fields' of comedy

Preposterous! Idiotic! Fantastic! Whatever you think the enclosed radio script is worth is O. K. with me 'Bill'.

Pardon a young mans brashness in addressing you so familiarly, but I know you'll understand.

With sincerest best wishes to you for a long life and happy days.                    I remain

Sincerely yours

HARRY YADKOE

43 Bock Ave.

Newark N J.''

To the foregoing letter appellant made the following reply:

''September 9, 1938

Mr. Harry Yadkoe
43 Bock Ave.
Newark, N. J.
Dear Harry Yadkoe:

I liked your wheezes and your treatment, which follows along the line I have been giving our dear customers. Thanks for your gay compliments and thanks for the snake story. I shall use it in conjunction with one I have either on the radio or in a picture. I am about to embark on a new radio series and if you would like to submit a couple of scripts gratis and I am able to use them, who knows, both parties being willing, we might enter into a contract. My reason for injecting the vile word 'gratis' is that we get so many letters from folks who if we even answer in the negative, immediately begin suit for plagiarism. Whilst we have never had to pay off, they sometimes become irritating no end.

Very truly yours,

W. C. FIELDS (Signed)

W. C. Fields

c/o Beyer & MacArthur Agents,

Taft Bldg.,

Cor. Hollywood Blvd. & Vine Sts.,

Hollywood, Calif.''

Under date of September 23, 1938, respondent wrote appellant the following letter:

"Mr. W. C. Fields
Dear Bill:

Enclosed find two scripts as per your request.

A word of advice Bill when wrestling 'Hisspo' the python. He don't understand 'double talk', being a little shy on grey matter, but watch him closely when he is using the double 'scissors'.

All kidding aside 'Bill' give the folks both barrels this fall.

There's only one man belongs at the top in 'radio' and 'screen' and that's 'Bill Fields'.

Sincerely yours<br>HARRY YADKOE

P. S.   Your letter to me was dated Sept. 9th, the envelope was postmarked Sept. 16th, I received it Sept. 21st."

Respondent wrote a third letter to appellant, as follows:

"October 4, 1938

Mr. W. C. Fields
Dear Bill:

Enclosed find some scenes and dialogue for your next picture 'You Can't Cheat an Honest Man'.

It is perfectly suited to your manificent (sic) talent for 'comedy and satire'.

With best wishes,

Sincerely yours,<br>HARRY YADKOE

P. S. Get that contract ready. Bill."

Appellant contends that, "A careful examination of the record discloses that from the mass of material, both written and oral, which plaintiff claimed to have submitted to defendant, only four items were used by defendant." The mention of "oral material" obviously refers to the oral testimony given by respondent as to certain of the material claimed to have been submitted to appellant, and which was not produced in court by appellant. It does not appear to be contended by appellant that any of the material was submitted in other than written form. The items as listed by appellant are: Item 1.  In one script submitted, respondent referred to "Death Valley on the Mojave" and to the "borax mines."  Appellant in a later radio broadcast used Death

Valley as a locale to which appellant made a trip which he described in the broadcast, making references to "borax" as the basis for certain gags. However, it appears from the record that respondent made no claim that this constituted a use of respondent's material. Item 2. In the same script, which has reference to a course of training in preparation for a wrestling bout with a python, respondent employed the following language: "Then a jog to the 'Blue Pacific' followed by the 'sheriff' (an old pal), a few pick-me-ups on the way and a swim to Catalina with a porpoise on my back. (What? No Ham?) Back again and stomach exercise (with a good meal). While running back my pants caught fire from friction so I just put on an extra burst of speed and blew it out. (No, no fire department.)" In connection with this material respondent complained of the use by appellant in a subsequent radio broadcast of an episode in which appellant was swimming to Catalina Island and his bathing suit started to smoke, and in which appellant encountered an exhausted seal on the way over which appellant threw on his back, and that the seal helped paddle every once in a while. Item 3. Respondent complained of the use in the motion picture "You Can't Cheat an Honest Man," in which picture appellant played one of the principal characters, of an episode wherein a woman fainted each time that appellant mentioned snakes and on each such occasion whiskey was called for, ostensibly to be used in treating the lady, but actually for the purpose of being drunk by the character being played by appellant. In this connection, respondent testified at the trial: "A. I sent him this snake story, here, this part here— Q. By Mr. Moore: That is Plaintiff's Exhibit 12 that you are referring to? A. Exhibit 12, yes, sir. And in addition to that I sent him some 'Snake-isms' and sequences and in the sequences I have him coming home and as he comes home he starts telling, boasting how he conquered the snake, how he beat it wrestling and as he does so this women hears the mention of snakes and faints, as she faints he gives her a drink of liquor and takes a drink of liquor himself and goes right on talking about snakes and the same thing happens and he takes another drink, and as he finishes he tries to get out and his wife goes to him and they just embrace—he sees the commotion he caused. The sequence also tells the rules how to hunt big game, never to use high-powered rifles

on lions, just look them in the eye and sort of hypnotize him, that is all—crocodiles are not worthy of a big game hunter's attention, just ignore them." Item 4. Respondent also complained of the scene in the aforementioned motion picture in which a character named Blacamon, an animal trainer, hypnotized animals, and actually ignored crocodiles. In the synopsis of the "Snake Story" which respondent testified he had sent to appellant, appears the following: "I am the big game hunder of old. For many days and many nights we travel, sighting only lions, tigers and crocodiles, or crocodilly, as we of the big game say. Hunting lions is child's play. You don't shoot them, 'yes, indeedy'. You just use nature's own weapons. You look them in the eye, and Leo the Lion is yours. Aren't you 'Bwana Simba' the lion master? Tigers the same. Crocodiles, chockadillies, sissy stuff. You just ignore them, trample them underfoot, pay no attention to em."

The appeal from the judgment herein is based upon the following grounds. 1. That the trial court committed reversible error in denying defendant's motion for a nonsuit. 2. That the material submitted by plaintiff was not protectible since it was not property subject to exclusive ownership and a judgment against defendant for its alleged use is against law. 3. That there is no evidence in the record of the value of the use of such material even if it were original, literary and protectible, and for that reason the judgment is against law. Appellant argues as follows: "Plaintiff's theory as stated by his counsel in open court was that plaintiff was the original author and owner of certain literary material which was used by defendant without permission and that plaintiff was entitled to the reasonable value of the use of plaintiff's material. Implicit in plaintiff's theory are the following points: a. That plaintiff's literary material was a product of the mind. b. That as such it was entitled to protection under the law. c. That defendant used a substantial part of plaintiff's literary material. d. That the use made by defendant of plaintiff's original literary material was not a 'fair use'."

■ ▪ Appellant, in thus outlining the "theory," misconstrues the nature of respondent's action. The basis of the action as framed by the allegations of the complaint, and as demonstrated by the evidence, is that of an implied contract

to pay for the use of respondent's material. In fact, the evidence, as shown by the correspondence above quoted, wherein appellant has expressly accepted the material submitted by respondent with his first letter, and has invited respondent to submit further material, would, to such extent, indicate an express contract, from which a promise to pay respondent for such material, if used by appellant, could reasonably be implied. The only item of agreement left unexpressed is the amount or rate of compensation to be paid respondent. The basis of the action here involved distinguishes it from the ordinary case of appropriation or misappropriation of the literary material of an author.

Appellant does not dispute the fact that respondent's material was used in the adoption of certain ideas taken therefrom. Appellant, however, seeks to defend such conduct on the ground that the material used was not protectible and that the use thereof was a "fair use." The cases cited in support of appellant's contention are principally those involving infringement of copyright or a misappropriation of literary material. ▇ The elements necessary to establish such a cause of action as the one here presented are set forth in *Liggett & Meyer Tobacco Co.* v. *Meyer*, 101 Ind.App. 420 [194 N.E. 206], a case involving a suit upon an implied contract to pay for the use of an advertising idea submitted by the appellee, wherein it is stated (at p. 210 [194 N.E.]) : "Enough (points) have been presented to call in question the sufficiency of the complaint to show an offer and acceptance; whether or not the appellee had any property right in the idea or scheme as it was offered by him to the appellant; whether or not the idea or scheme was merchantable; and whether or not the complaint sufficiently alleges an appropriation by the appellant of a property right owned by the appellee under such circumstances as would raise an obligation to pay for same. The complaint does not allege any express promise on the part of the appellant to pay the appellee for the idea or scheme. We think each paragraph of the complaint sufficient to withstand the demurrers addressed thereto. Certainly the thing offered the appellee must be such as that he has a property right therein which he can sell, and certainly there must be an offer and acceptance, and, in the absence of an express agreement to pay, there must be alleged such a use of the property right of the appellee by the appellant as would raise an obligation to pay

for the same. . . . This is a common-law action. The rules of the common law are continually changing and expanding with the progress of the society in which it prevails. It does not lag behind, but adapts itself to the conditions of the present so that the ends of justice may be reached. While we recognize that an abstract idea as such may not be the subject of a property right, yet, when it takes upon itself the concrete form which we find in the instant case, it is our opinion that it then becomes a property right subject to sale. Of course, it must be something novel and new; in other words, one cannot claim any right in the multiplication table.''

■ The question of originality, however, is one of fact for the determination of the jury. (*Dezendorf* v. *Twentieth Century-Fox Film Corporation*, (C.C.A. 9), 99 F.2d 850.)

■ While it is settled that there can be no property right in an abstract idea, there may be literary property in the form in which ideas are expressed. (*Fendler* v. *Morosco*, 253 N.Y. 281 [171 N.E. 56].) Whether an idea is expressed in concrete form is a matter of degree. (*Plus Promotions, Inc.* v. *RCA Mfg. Co.*, Inc., 49 F.Supp. 116.) Respondent's right to recover judgment against appellant, upon the allegations of the complaint and upon the evidence presented thereunder is sustained by *Liggett & Meyer Tobacco Co.* v. *Meyer, supra; How J. Ryan & Associates* v. *Century Brewing Association*, 185 Wash. 600 [55 P.2d 1053, 104 A.L.R. 1353]; and *Cole* v. *Phillips H. Lord, Inc.*, (N.Y.) 262 App.Div. 116 [28 N.Y.S.2d 404]. It should be stated that the fact that respondent is not a professional writer is of no consequence under the circumstances here presented.

■ In regard to appellant's contention that any use made by appellant of respondent's material was ''trivial, unsubstantial and insignificant,'' it is said in *Fendler* v. *Morosco*, supra, 171 N.E. at page 60: ''A part, however small, of a work which is appropriated is material where the result of the appropriation is the suggestion or impression of similarity or identity.'' In the present case, the jury might well have taken into account the nature of the matter involved and the likelihood that by the adoption of the fundamental ideas embodied in respondent's scripts, that particular material was deprived of its substance and rendered of no further value on the market. ■ To uphold the contention that no liability attached to the use of respondent's material,

would be to hold that where literary material is offered and accepted under circumstances implying an agreement to pay therefor, the ideas embodied in the material could be taken therefrom and used with impunity as long as the concrete expressions of the author were not employed. Such a conclusion lacks authority even in the cases cited by appellant. "Again, common-law rights in unpublished works are of a wider and more exclusive nature than the rights conferred by statutory copyright in published works. The common law prohibits any kind of unauthorized interference with, or use of, an unpublished work on the ground of an exclusive property right, . . ." (18 C.J.S., pp. 138, 139, Copyright and Literary Property, § 2.) Such a statement as the one just quoted from Corpus Juris Secundum, though not supported by specific citation of authority in that work, is consistent with the rule of law as to literary property embodied in section 980 of the Civil Code, which provides: "The author of any product of the mind, whether it is an invention, or a composition in letters or art, or a design, with or without delineation, or other graphical representation, has an exclusive ownership therein, and in the representation or expression thereof, which continues so long as the product and the representations or expressions thereof made by him remain in his possession." The use made by appellant of respondent's material is wholly inconsistent with respondent's exclusive ownership therein. In passing, it should be noted that, aside from appellant's admission of the use made of respondent's material, the record reveals sufficient evidence to uphold the jury in finding that appellant used such material.

In support of appellant's contention that there is no evidence of the value of the use of respondent's material, it is argued that the evidence introduced upon this issue was that of the value of the material itself and not of the value of the use of such material. The evidence of value was contained in the testimony of respondent. No evidence upon this question appears to have been offered on behalf of appellant. No objection was interposed to the introduction of such evidence given by respondent, and respondent was cross-examined upon the subject. From an examination of the record, it cannot be successfully urged, therefore, that respondent's testimony was not concerned with the value of the use

of the material in question. Moreover, the implied finding that the nature of the material here involved is such that no value attaches thereto aside from the use thereof, and that once such material is used the value therein is gone, is fully justified by the evidence. In this respect the analogy attempted to be drawn by appellant between the use of respondent's material and the renting of a horse is wholly invalid. Under the circumstances here presented, appellant's contention as to lack of evidence of the value of the use of the material is without merit.

Sufficient evidence was presented on behalf of respondent for consideration by the jury of the issues raised by the pleadings; the evidence sustains the judgment and the judgment is in accord with the law applicable to the particular facts of the case. The judgment is affirmed.

York, P. J., and White, J., concurred.