[L. A. No. 22045. In Bank. Apr. 29, 1953.]

ILSE LAHN WEITZENKORN, Appellant, v. SOL LESSER et al., Respondents.

Fendler, Weber & Lerner, Harold A. Fendler, Daniel A. Weber and Robert W. Lerner for Appellant.

Aubrey I. Finn, Pacht, Tannenbaum & Ross, Clore Warne, Gordon Stulberg and Maxwell E. Greenberg as Amici Curiae on behalf of Appellant.

Mitchell, Silberberg & Knupp and Arthur Groman for Respondents.

Thelen, Marrin, Johnson & Bridges, Loeb & Loeb, Herman F. Selvin and Harry L. Gershon as Amici Curiae on behalf of Respondents.

EDMONDS, J.—Ilse Lahn Weitzenkorn has sued Sol Lesser, Sol Lesser Productions, Inc., and RKO Radio Pictures, Inc., charging that they have unlawfully used literary property of which she is the owner. Her appeal is from a judgment of dismissal which followed an order sustaining the demurrers of the defendants without leave to amend.

In the first cause of action, against Lesser and Lesser Productions only, Weitzenkorn alleges that she originated, created and wrote a literary composition entitled, "Tarzan

in the Land of Eternal Youth,'' of which she is the exclusive owner. A copy of the composition is attached to the complaint. This composition was submitted to Lesser and the corporation at their special request, ''pursuant to an express oral understanding and agreement'' that, in consideration of such submission, she would be paid the reasonable value thereof and given the customary screen credit as author if they should use all or any part of it. Lesser and Lesser Productions accepted submission of the document, she states, retained it in their possession for several months, and ''became fully familiar with the contents.''

Thereafter according to the complaint, Lesser and Lesser Productions produced a motion picture, entitled ''Tarzan's Magic Fountain,'' which they distributed and exhibited in conjunction with RKO Pictures. This motion picture, Weitzenkorn alleges, ''is patterned upon and copies and uses'' her composition. By reason of its nature and bulk, and because it is in the possession of the defendants, a copy of the motion picture film is not attached to the complaint. Damages of $50,000 are claimed as the reasonable value of her composition, and the same amount for the reasonable value of the screen credit which she did not receive.

The second count, also against Lesser and Lesser Productions only, incorporates by reference all of the allegations of the first except the averments with respect to an express agreement. In addition, it alleges that Weitzenkorn submitted the composition to Lesser and Lesser Productions at their request for the purpose of sale to, or use by, them, upon payment to her of its reasonable value.

The third count, against all of the defendants, incorporates by reference the material allegations of the first, with the exception of those relating to an express agreement and damages. Weitzenkorn then alleges that, without her knowledge, authority or consent, the defendants produced and distributed ''Tarzan's Magic Fountain,'' substantially copying and misappropriating her composition. General damages of $100,000 are alleged to have been sustained.

Lesser and Lesser Productions demurred to the complaint upon the grounds that each count fails to state facts sufficient to constitute a cause of action and that, in certain particulars, each of them is ambiguous, unintelligible or uncertain. RKO demurred to the third count upon the same grounds. At the request of the defendants, pursuant to section 426 of the Code of Civil Procedure, the court made an order for a viewing

of the motion picture prior to and in connection with its ruling on the demurrers. The order also directed "that the contents of such production be deemed a part of the complaint to the same extent and with the same force as though such production had been attached to the complaint."

The composition or synopsis which is the basis of the controversy may be summarized as follows:

Tarzan, Jane, Boy and Cheta are interrupted by the arrival of an airplane "breaking the peace of their jungle idyl." The visitors are Jane's British cousin, Peter Selton, and his man-servant, Gus. Peter is an "aging dandy." Gus provides comic relief, aided and abetted by the monkey, Cheta. Tarzan is not too happy to have guests; the travelers appear to be prepared for an indefinite stay.

Peter is "rather cagey about the reason" for his visit and Tarzan "senses there is more to Peter's expedition" than Peter is willing to reveal. Peter flies about the countryside seeking, and eventually finding, the Fountain of Youth located in the "Land Between Dusk and Sunrise," of which he has a map. Boy, without Tarzan's permission, accompanies Peter and Gus on the day they fly to the mysterious land. The three are captured by warriors of the beautiful but cruel Queen Lilith who rules the land of eternal youth. Queen Lilith offers them the choice of eternal youth or death. No one can leave her land.

Tarzan, meanwhile, worried by the absence of Boy, sets off with Jane and Cheta to rescue him. Tarzan and Jane themselves are captured by Lilith's warriors. Tarzan escapes with Jane and Boy and, after getting them to safety, attempts to free Peter and Gus. In the ensuing battle, Peter dies a hero. Tarzan destroys the land and its inhabitants by throwing a flame into the fountain of youth. The queen and her subjects wither into extreme old age, shrink, disintegrate and vanish.

The motion picture has been viewed by the Justices of this court. It also features Tarzan, Jane and Cheta, but has no character corresponding to Boy. Tarzan freely enters and leaves Blue Valley, the land of eternal youth. The kindly king of the land is his friend. Tarzan's first visit is upon a mission of mercy. He is seeking Gloria James, an aviatrix missing for 20 years, whose testimony is needed to free a man from prison. Gloria leaves the valley with Tarzan, goes to England and marries. Having aged rapidly after leaving the

valley, she comes back to Africa with her husband to seek Tarzan's help in returning to the land of eternal youth.

Tarzan refuses Gloria's request, but in his absence Jane offers to lead them to Blue Valley. Tarzan follows the party to teach Jane a lesson, rescues them from a flood, and secretly conveys Gloria and her husband to the land of eternal youth, leaving Jane to return home. The king of the valley permits Tarzan to leave in friendship, but rebel warriors capture and attempt to blind him.

Tarzan escapes to discover Jane in peril. Dodd and Trask, the villains of the picture who are seeking the land of eternal youth for profit, have forced Jane to show them the way. Tarzan rescues Jane. Dodd and Trask die at the hands of valley guards.

Weitzenkorn contends that her complaint tenders issues of fact with respect to originality, similarity and copying which require a trial on the merits. These issues, she says, should not have been determined on demurrer as questions of law. In addition, she argues that the first and second counts, based upon express and implied contracts, tender issues of fact as to whether Lesser and Lesser Productions promised to pay for the use of her composition regardless of whether it was original.

It is also argued that section 426 of the Code of Civil Procedure, as amended in 1947, does not authorize the determination upon demurrer of factual issues such as originality, similarity, access and copying. The section is said to apply only to "infringement" cases, not to those concerning breach of express or implied contract.

The defendants take the position that section 426 was amended to create a statutory method for determining upon demurrer whether a complaint for plagiarism and related contract theories states facts sufficient to constitute a cause of action. Originality and similarity, they say, are questions of law to be determined by the court in the first instance. Upon the issue of originality, they contend, the court should apply the doctrine of judicial notice.

Section 426(3), Code of Civil Procedure, as amended in 1947, in part provides: "If the demand be for relief on account of the alleged infringement of the plaintiff's rights in and to a literary, artistic or intellectual production, there must be attached to the complaint a copy of the production as to which the infringement is claimed and a copy of the alleged infringing production. If, by reason of bulk or the nature

of the production, it is not practicable to attach a copy to the complaint, that fact and the reasons why it is impracticable to attach a copy of the production to the complaint shall be alleged; and the court, in connection with any demurrer, motion or other proceeding in the cause in which a knowledge of the contents of such production may be necessary or desirable, shall make such order for a view of the production not attached as will suit the convenience of the court, to the end that the contents of such production may be deemed to be a part of the complaint to the same extent and with the same force as though such production had been capable of being and had been attached to the complaint.''

The effective date of the statute was subsequent to the filing of the complaints in *Stanley* v. *Columbia Broadcasting System, Inc.,* 35 Cal.2d 653 [221 P.2d 73, 23 A.L.R.2d 216], and *Golding* v. *R.K.O. Pictures, Inc.,* 35 Cal.2d 690 [221 P.2d 95]. The question as to the effect of the enactment here arises for the first time.

Weitzenkorn asserts that the code section is not applicable to her first and second causes of action. As she construes the statute, it is limited to the tort action for "infringement." The defendants claim its benefits as to both the tort action and related contract actions.

The statute is similar to rule 2 of the Supreme Court Rules for Practice and Procedure under section 101 of the Copyright Act. (17 U.S.C.A., following § 101, formerly § 25.) That rule provides in part: "A copy of the alleged infringement of copyright, if actually made, and a copy of the work alleged to be infringed, should accompany the petition, or its absence be explained; . . ." Form 17 of the Federal Rules of Civil Procedure also provides for attachment of infringed and infringing compositions to a complaint for infringement of copyright. (Fed. Rules Civ. Proc., form 17, 28 U.S.C.A.)

The federal courts consistently have held that failure to attach copies of the infringed and infringing compositions, or to explain such failure, renders a complaint for infringement of copyright defective. (*Buck* v. *Liederkranz,* 34 F.Supp. 1006, 1007; *Cole* v. *Allen,* 3 F.R.D. 236, 237.) However, rule 2 makes no provision for the court to order a view of the production if physical attachment is not feasible. There is also an essential difference in language between rule 2 and our statute. Rule 2 is limited to "infringement of copyright"; section 426 (3) extends to "infringement of . . . rights in and to a literary, artistic or intellectual production." Thus, rule

2 clearly applies only to a cause of action for infringement of copyright, and its provisions are not applicable to a cause of action based upon breach of contract or quasi contract.

Weitzenkorn argues that, without exception, the word "infringement" has been defined by the state and federal courts as referring to a tort. The statute, she says, cannot be construed as applying "infringement" to an action for breach of express or implied contract or for quasi contract. She relies upon the rule that: "When the scope and meaning of words or phrases in a statute have been repeatedly interpreted by the courts, there is some indication that the use of them in a subsequent statute in a similar setting carries with it a like construction." (*Perry* v. *Jordan,* 34 Cal.2d 87, 93 [207 P.2d 47]; *City of Long Beach* v. *Payne,* 3 Cal.2d 184, 191 [44 P.2d 305].)

However, the courts have not defined the word "infringement," standing by itself, as referring only to a tort. Rather, the definition consistently has been that the phrase "infringement of copyright" connotes a tort. (*Frankel* v. *Irwin,* 34 F.2d 142, 143; *McCaleb* v. *Fox Film Corp.,* 299 F. 48, 50.) In like manner, an action to recover damages arising out of alleged plagiarism has been classified as a tort action (*Italiani* v. *Metro-Goldwyn-Mayer Corp.,* 45 Cal.App.2d 464, 466-467 [114 P.2d 370]) and the defendant in such an action referred to as a tort feasor. (*Barsha* v. *Metro-Goldwyn-Mayer,* 32 Cal. App.2d 556, 559 [90 P.2d 371].)

Although the word "infringement" is most commonly applied to actions for unlawful appropriation of copyright, trademark, or patent (see, generally, 21 W. & Ph. 315 et seq., "Infringe; Infringement"), its usage is not limited solely to such actions. Black's Law Dictionary, 4th edition, page 920, defines "infringement" as: "A breaking into; a trespass or encroachment upon; a violation of a law, regulation, contract, or right. Used especially of invasions of the rights secured by patents, copyrights, and trademarks." This definition of infringement as applying to both tortious and contractual wrongs is in accord with the definitions in Webster's New International Dictionary, second edition. "Infringe" is there defined: "To commit a breach of; to violate; to neglect to fulfill or obey; to commit an infringement of; as, to *infringe* a law, contract, or patent." Webster's definition of "infringement" is: "1. Act of infringing; esp., breach; violation; nonfulfillment; as, the *infringement* of a treaty, compact, law or

constitution. 2. An encroachment or trespass on a right or privilege; a trespass; . . .''

It is clear, therefore, that the word ''infringement'' has no technical meaning when disassociated from the phrase ''infringement of copyright (patent, trademark).'' Thus, an action based upon infringement, or breach, of contract would fall within the terms of a statute relating to infringement of rights which may be contractual. Only where the statute refers to a term of art such as ''infringement of copyright'' would the action for breach of contract be excluded from its operation.

The Legislature has not limited section 426(3) to ''infringement of copyright'' alone, but has included within its operation infringement of any ''rights in and to a literary, artistic or intellectual production.'' These rights may be entirely contractual, as in *Stanley* v. *Columbia·Broadcasting System, Inc.,* *supra,* where there was no copyright. Construed in accordance with these definitions, the statute applies not only to the third alleged cause of action for infringement of copyright, but also to the first and second causes of action for infringement of related contract rights. Accordingly, the order of the superior court making the motion picture a part of the complaint affects all three alleged causes of action.

Concerning the scope of the code section, Weitzenkorn contends that all of the issues presented are questions of fact which cannot be decided upon demurrer. She argues that the statute cannot deprive her of her right to a trial by jury. The only purpose of the statute, she says, is to protect the defendant in such an action from an attempt to prove a fraudulent claim by presenting upon the trial a production created after the action was commenced.

The statute is neither so limited as she contends, nor so broad as to destroy the right to a jury trial. The Legislature has required that the alleged infringed and infringing productions be made a part of the complaint. If this be impracticable, by a different procedure they are a part of the pleading to the same extent as if they had been attached to it.

Weitzenkorn correctly argues that the well pleaded facts of her complaint must be taken as true for the purposes of demurrer. However, the facts pleaded include the productions incorporated in accordance with the statute. ''The general rule is that when a written instrument which is the foundation of a cause of action or defense is attached to a pleading as an exhibit and incorporated into it by proper reference,

the court may, upon demurrer, examine the exhibit and treat the pleader's allegations of its legal effect as surplusage." (*Washer* v. *Bank of America,* 21 Cal.2d 822, 829-830 [136 P.2d 297, 155 A.L.R. 1338]; *Gosewisch* v. *Doran,* 161 Cal. 511, 515-516 [119 P. 656, Ann.Cas. 1913D 442]; *Ventura etc. Ry. Co.* v. *Hartman,* 116 Cal. 260, 263 [48 P. 65].) The same rule is as applicable to an action for the taking of literary property as to other types of actions to which it has been applied. (*Shipman* v. *R.K.O. Radio Pictures, Inc.,* 20 F.Supp. 249, affd. 100 F.2d 533; *Lowenfels* v. *Nathan,* 2 F.Supp. 73, 74.)

The vital question, therefore, is: What matters properly are brought within the scope of the inquiry by these demurrers? Weitzenkorn argues that the issues concerning originality, similarity and copying are questions of fact which cannot be determined upon demurrer. The defendants contend that these are questions of law to be determined by the court in the first instance. The issue of access is not here involved because the allegation thereof in the complaint must be taken as true for the purpose of ruling upon the demurrers.

Although the precise question here is of first impression in this state, it has been foreshadowed by the Stanley and Golding cases, *supra.* As stated in the Golding case, "It is, however, only the product of the writer's creative mind which is protectible. . . . The plaintiff must establish, as the subject of the cause of action, a right in the nature of property which is capable of ownership. . . . It is essential from the nature of the inquiry as to originality to first dissect the play to determine wherein, if at all, plaintiffs have any protectible property right. Assuming this is established, then comparison may be made between the two works *as to the original and protectible portion only.*" (*Supra,* pp. 695, 700.)

Weitzenkorn would limit the holding of the Golding case to the single proposition that only the "question as to whether the claimed original or novel idea has been reduced to concrete form is an issue of law." (P. 695.) She construes the decision as holding that the issues of originality, similarity, and copying are questions of fact only for the jury. However, from a reading of Golding's play, the court determined that there was sufficient evidence of originality to sustain the implied finding of the jury. Accordingly, if the production attached to Weitzenkorn's complaint shows no evidence of originality, she has no protectible property therein and there is no question to submit to the jury.

The Stanley case, *supra*, page 665, and *Yadkoe* v. *Fields*, 66 Cal.App.2d 150, 159 [151 P.2d 906], state that the originality of the plaintiff's program is not a question of law to be determined by the court but is one of fact for the jury. Implicit in both opinions, however, is the acknowledgment that, in the first instance, the question of originality or novelty is one of law. After determining the issue of similarity in the Stanley case, the court stated: "The next question to be discussed is whether or not plaintiff's idea as such was so new and novel as to be worthy of protection." (P. 663.) Obviously, without proof of originality, the judgment would not have been affirmed. Likewise in *Yadkoe* v. *Fields*, the court held that: "Sufficient evidence was presented on behalf of respondent for consideration by the jury of the issues raised by the pleadings; . . ." (*Supra*, p. 161.)

The next question is what method the court may use to determine the issue of originality presented by the demurrers. The defendants urge that the court may take judicial notice of the contents of published books in deciding whether Weitzenkorn's claim of originality has merit.

This would carry the doctrine of judicial notice far beyond its proper bounds. (*Dezendorf* v. *Twentieth Century-Fox Film Corp.*, 99 F.2d 850, 851.) "The doctrine of judicial notice was adopted as a judicial short-cut to avoid necessity for the formal introduction of evidence in certain cases where there is no real need for such evidence. Before a court will take judicial notice of any fact, however, that fact must be a matter of common and general knowledge, well established and authoritatively settled, not doubtful or uncertain. The test is whether sufficient notoriety attaches to the fact to make it proper to assume its existence without proof." (*Communist Party* v. *Peek*, 20 Cal.2d 536, 546 [127 P.2d 889].) "It is truly said that the power of judicial notice is as to matters claimed to be matters of general knowledge one to be used with caution. If there is any doubt whatever either as to the fact itself or as to its being a matter of common knowledge, evidence should be required." (*Varcoe* v. *Lee*, 180 Cal. 338, 345 [181 P. 223].)

The court may take judicial notice of the fact that there exist in the realm of fiction certain well-known characters called Tarzan, Jane and Cheta who live in Africa, and that the myth of a fountain of eternal youth is one of the oldest known to man. These are facts of common and general knowledge. However, common and general knowledge may not

be said to include the fact that, in previously published works, these characters and myth have been combined with the same treatment and manner of expression which Weitzenkorn has used. Nor by judicial notice may a court find that Weitzenkorn's composition has been copied, as to plot or details, from previously published books. These are matters which are properly the subject of proof.

Even though, by applying the rule of judicial notice, the basic characters and locale of Weitzenkorn's composition might be held to be unoriginal, the combination of these characters and locale with other characters in a certain style and manner of expression cannot be held, upon demurrer, to lack originality as a matter of law. For these reasons, insofar as the question of a lack of originality may be involved in each cause of action, the demurrers could not have been sustained solely upon that ground.

Section 980 of the Civil Code was amended materially in 1947. At the time the Stanley and Golding cases were commenced, it stated the following rule: "The author of any product of the mind, whether it is an invention or a composition in letters or art, or a design, with or without delineation, or other graphical representation, has an exclusive ownership therein, and in the representation or expression thereof, which continues so long as the product and the representations or expressions thereof made by him remain in his possession." As amended, the section read: "The author or proprietor of any composition in letters or art has an exclusive ownership in the representation or expression thereof as against all persons except one who originally and independently creates the same or a similar composition." Insofar as is material to this action, the section is now in the same form.

In the Stanley and Golding cases, protection was extended to an "idea" rather than to the form and manner of its expression. The judgment in favor of Stanley was affirmed upon the ground that his idea was the new and novel combination of elements for a radio program. (P. 664.) In the Golding case the court, relying upon the former wording of section 980, held that the "product of the writer's creative mind" (p. 695) is protectible and it extended that protection to his idea, "the basic dramatic core" (p. 697) of his play. Such extension of protection to an idea transcends the normal bounds of common law copyright (*Moore* v. *Ford Motor Co.*, 28 F.2d 529, 536, aff'd. 43 F.2d 685; Amdur, Copyright Law and Practice 50, § 11; note, 23 A.L.R.2d 244, 249) in which

ideas "are free as air." (*Fendler* v. *Morosco,* 253 N.Y. 281, 287 [171 N.E. 56].) However, in its earlier form, the statute expressly protected both the idea, the "product of the mind," *and* "the representation or expression thereof."

The 1947 amendment to section 980 has eliminated the protection formerly given to "any product of the mind." The statute as it now exists, and as it read at the time this cause of action arose, provides protection only "in the representation or expression" of a composition. The Legislature has abrogated the rule of protectibility of an idea and California now accepts the traditional theory of protectible property under common law copyright. (38 Cal.L.Rev. 337; note, 23 A.L.R.2d 244, 262, n. 1.)

No problem is presented in this case as to whether Weitzenkorn's idea has been reduced to concrete form, the composition for which she claims protection being attached to the complaint. Therefore, the question whether she has a protectible property interest depends upon the originality of form and manner of expression, the development of characterizations and sequence of events. (*Universal Pictures Co.* v. *Harold Lloyd Corp.,* 162 F.2d 354, 363; *Harold Lloyd Corp.,* v. *Witwer,* 65 F.2d 1, 24-27; *Stephens* v. *Howells Sales Co.,* 16 F.2d 805, 808.) The idea alone, the bare, undeveloped story situation or theme, is not protectible. (*Shipman* v. *R.K.O. Radio Pictures, Inc.,* 100 F.2d 533, 536-537; *Nichols* v. *Universal Pictures Corp.,* 45 F.2d 119, 122, cert. denied, 282 U.S. 902 [51 S.Ct. 216, 75 L.Ed. 795]; *Dymow* v. *Bolton,* 11 F.2d 690, 691.) Here, to use the form of analysis employed in the Golding case, Weitzenkorn's idea, or "basic dramatic core" (p. 694), is to combine certain characters in an African locale with the myth of a fountain of eternal youth and, through the adventures which befall them, to teach a moral. The moral appears to be that eternal youth is not a blessing but a curse, the only satisfactory life being one full of love and affection. However, the "representation or expression" now protected by the statute is not this basic dramatic core, but is rather the development of both characterizations and adventures.

The next point requiring consideration concerns similarity. Access being admitted by the demurrer, if some substantial similarity between the compositions reasonably could be found, the issues of similarity and of copying are to be determined by the trier of fact.

In the Golding case it was said that whether the ''evidence is sufficient to sustain the jury's implied finding of similarity is a question which can only be determined upon appeal by reading the play and seeing the moving picture, which have been done by this court.

''The parties are directly at variance as to whether this issue of similarity presents a question of law or of fact. The only direct statements in the cases appear to confirm the playwrights' position that it is a question of fact for the jury. (Citations.) However, they extend this point too far when they contend that the determination by the jury of this issue 'is conclusive' upon appeal. No finding of fact is binding upon an appellate court if it is not supported by substantial evidence. The function of this court, when the contention of insufficiency is made, is to examine the record to ascertain whether there is evidence to support the verdict of the jury.

''. . . It is necessary to read or view the two works to see if they present any substantial similarity insofar as the plaintiff's property in his work is concerned. This is not to say that the appellate court will substitute itself for the jury to decide what it thinks of the issue of similarity; it is merely a question of determining if there is any substantial evidence of similarity to support the jury's finding.'' (Pp. 698-699.)

Unquestionably, an appellate court may determine, as a matter of law, that the evidence is insufficient to support the judgment. As a corollary of this fundamental principle, whether there is any question to present to the trier of fact is, in the first instance, a question of law. And the two productions, the only evidence of similarity which could possibly be offered, are before the court upon the demurrer in accordance with the statute.

The Stanley case recognizes the rule as to similarity applied in the Golding case. The court there held: ''With respect to the comparison between the two programs and without unnecessarily 'dissecting' them, there appears to be sufficient similarity to justify the finding of the jury as the 'average, reasonable man.' . . . We then have a question of fact— that of the similarity between the two programs. This question of fact was decided adversely to defendant by the jury whose duty it was to make the determination. The rule is settled that this determination will not be interfered with upon appeal where there is evidence to sustain it. The evidence, in the form of the two programs alone, shows that there is substantial similarity to support the verdict.'' (Pp. 662-

663.) If no similarity had appeared between the two productions, as a matter of law, the judgment entered upon the verdict of the jury would have been reversed.

Having both productions before it in accordance with section 426 (3), the court may determine whether there is substantial similarity between them. If, as a matter of law, there is no such similarity, no question of fact is in issue and the demurrers to each count of the complaint were properly sustained. But if, from a comparison of the two productions, such similarity reasonably might be found, that issue, and also the question as to copying, should have been submitted to the jury for determination.

In order for the third count of the complaint to state a cause of action for plagiarism, there must be some substantial similarity between the motion picture and protectible portions of Weitzenkorn's composition. (*Golding* v. *R.K.O. Pictures, Inc., supra,* pp. 699, 700; *Shipman* v. *R.K.O. Radio Pictures, supra,* 100 F.2d 533, 537-538; *De Montijo* v. *20th Century Fox Film Corp.,* 40 F. Supp. 133, 138-139; *Echevarria* v. *Warner Bros. Pictures,* 12 F. Supp. 632, 638.) A careful comparison of Weitzenkorn's composition and the motion picture shows no similarity between them as to form and manner of expression. It is true that a portion of the "basic dramatic core" might be found similar. Both productions combine the characters of Tarzan, Jane and Cheta in an African locale with the myth of a fountain of eternal youth. However, even here there is an essential difference. The combination of characters, locale and myth is not utilized for the same purposes. If the motion picture has a moral, it is that eternal youth is the reward for the good, which must be saved from the grasp of evil forces which would corrupt it. In achieving their divergent goals from certain similar combinations of basic ingredients, the two stories are developed along widely different lines. This is true of characterizations, descriptions, and events. Because there is no similarity as to protectible portions of Weitzenkorn's composition, the demurrer to the third count of the complaint properly was sustained.

The question of protectibility need not be considered in determining the sufficiency of the allegations of the first count of the complaint, based upon express contract. As it is pleaded, the proof could show that Lesser and Lesser Productions agreed to pay for Weitzenkorn's composition if they used it, or any portion of it, regardless of its originality. An "idea, if valu-

able, may be the subject of contract. While the idea disclosed may be common or even open to public knowledge, yet such disclosure if protected by contract, is sufficient consideration for the promise to pay.'' (*High* v. *Trade Union Courier Pub. Corp.*, 69 N.Y.S.2d 526, 529, affd. 89 N.Y.S.2d 527; *Cole* v. *Lord, Inc.*, 262 App.Div. 116, 121 [28 N.Y.S.2d 404]; *Schonwald* v. *F. Burkart Mfg. Co.*, 356 Mo. 435, 448 [202 S.W.2d 7]; *Brunner* v. *Stix, Baer & Fuller Co.*, 352 Mo. 1225, 1232 [181 S.W.2d 643].)

The charge of breach of contract, however, is dependent upon the allegation that the motion picture ''is patterned upon and copies and uses'' Weitzenkorn's composition. If, as a matter of law, there is no similiarity whatsoever between the productions, the first count does not state a cause of action. However, although there is no similarity between protectible portions of Weitzenkorn's composition and the defendants' production, similarity may exist because of the combination of characters, locale, and myth. It is conceivable, even though improbable, that Weitzenkorn might be able to introduce evidence tending to show that the parties entered into an express contract whereby Lesser and Lesser Productions agreed to pay for her production regardless of its protectibility and no matter how slight or commonplace the portion which they used. Such evidence, together with comparison of the productions, would present questions of fact for the jury as to the terms of the contract, access, similarity, and copying. ▮ Under these circumstances, the facts pleaded in the first count are sufficient to state a cause of action and the demurrer to it was improperly sustained.

▮ The second count of the complaint alleges that Weitzenkorn submitted her composition to Lesser and Lesser Productions ''at their special instance and request . . . for the purpose of sale to or use by defendants upon payment to plaintiff of the reasonable value thereof and said defendants . . . thereupon accepted submission of said literary and dramatic composition by plaintiff and retained the same and became fully familiar with the contents thereof.'' Incorporated by reference from the first count are the allegations of originality, copying, the reasonable value of the production, and the defendants' refusal to pay. This is, in essence, the common count of *quantum valebant* for the reasonable value of goods sold and delivered.

''This form of pleading, a common count, by long continued practice is not subject to attack by general demurrer or by

a special demurrer for uncertainty." (*Auckland* v. *Conlin*, 203 Cal. 776, 778 [265 P. 946]; *Pike* v. *Zadig*, 171 Cal. 273, 276 [152 P. 923]; *Abadie* v. *Carrillo*, 32 Cal. 172, 175.) Nor is it subject to special demurrer on the ground of ambiguity or unintelligibility. (*Pleasant* v. *Samuels*, 114 Cal. 34, 38 [45 P. 998]; see, generally, King, *The Use of the Common Counts in California*, 14 So.Cal.L.Rev. 288, 306.) Although an allegation of the promise to pay was essential to an action of assumpsit in common law pleading (Shipman, Common-Law Pleading, 3d ed., p. 258) it is unnecessary as a part of the common count under the code system of pleading. (*Gregory* v. *Clabrough's Executors*, 129 Cal. 475, 478 [62 P. 72]; *Wilkins* v. *Stidger*, 22 Cal. 231, 235 [83 Am.Dec. 64].)

The defendants contend that, where a demurrer is sustained as to a count specifically pleaded, it should also be sustained as to the common count based upon the same facts. Although it is proper under such circumstances to sustain a general demurrer to the entire complaint (*Hays* v. *Temple*, 23 Cal. App.2d 690, 695 [73 P.2d 1248]; *Harris* v. *Kessler*, 124 Cal. App. 299, 303 [12 P.2d 467]), the rule is not here applicable. The first count is sufficient to state a cause of action and the facts relied upon in the second count are identical, with the exception that no express promise to pay is alleged. That the facts may also be substantially similar to those in the third count, which does not state a cause of action, will not defeat the common count unless it clearly appears to be based upon the insufficient, rather than the sufficient, specific allegations.

Under the code system of pleading, as at common law, the common counts are sufficient to state a cause of action upon either a contract implied in fact (*McClure* v. *Alberti*, 190 Cal. 348, 351 [212 P. 204]; *Castagnino* v. *Balletta*, 82 Cal. 250, 257-259 [23 P. 127]) or a contract implied in law. (*Steiner* v. *Rowley*, 35 Cal.2d 713, 717-718 [221 P.2d 9]; *Minor* v. *Baldridge*, 123 Cal. 187, 190 [55 P. 783].) "It is not necessary for the pleader to indicate what kind of 'implied' contract, whether in fact or in law, he relies upon." (Shipman, Common-Law Pleading, 3d ed., p. 154.) However, the common count will not lie where the obligation of the defendant is something other than the payment of money. (*Willett & Burr* v. *Alpert*, 181 Cal. 652, 658-662 [185 P. 976]; *O'Connor* v. *Dingley*, 26 Cal. 11, 22-23.) Therefore, although no objection to the claim for damages for failure to give screen credit was raised as a ground for demurrer to the second count, it should be noted that recovery, if any, upon the *quantum*

*valebant* count must be limited solely to the reasonable value of the composition, or portion of it, which was used.

It is unnecessary for the pleading to distinguish between the contract implied in fact and the contract implied in law, or quasi contract, but the elements which must be proved for recovery upon each of them are quite different. The only distinction between an implied-in-fact contract and an express contract is that, in the former, the promise is not expressed in words but is implied from the promisor's conduct. (*Silva* v. *Providence Hospital of Oakland*, 14 Cal.2d 762, 773 [97 P.2d 798] ; *Smith* v. *Moynihan*, 44 Cal. 53, 62; *Grant* v. *Long*, 33 Cal.App.2d 725, 736-737 [92 P.2d 940] ; Civ. Code, §§ 1619-1621.) Under the theory of a contract implied in fact, the required proof is essentially the same as under the first count upon express contract, with the exception that conduct from which the promise may be implied must be proved. (*Cole* v. *Lord, Inc., supra.*) Therefore, for the reasons stated in discussing the sufficiency of the allegations of the first count of the complaint, the demurrer to the second count should not have been sustained.

This conclusion does not mean, however, that, upon trial, Weitzenkorn may be able to recover upon either the theory of a contract implied in fact or that of one implied in law. The so-called "contract implied in law" in reality is not a contract. (*Philpott* v. *Superior Court*, 1 Cal.2d 512, 520 [36 P.2d 635, 95 A.L.R. 990] ; *Hallidie* v. *Enginger*, 175 Cal. 505, 508 [166 P. 1].) "Quasi-contracts, unlike true contracts, are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice." (Rest., Contracts, § 5, com. a.) Quasi-contractual recovery is based upon benefit accepted or derived for which the law implies an obligation to pay. "Where no benefit is accepted or derived there is nothing from which such contract can be implied." (*Rowell* v. *Crow*, 93 Cal.App.2d 500, 503 [209 P.2d 149].)

The existence of a contract implied in law under a *quantum valebant* count depends upon whether the defendant "has used for its benefit any *property* of [plaintiff] . . . in such manner and under such circumstances that the law will impose a duty of compensation therefor." (*Thomas* v. *R. J. Reynolds Tobacco Co.*, 350 Pa. 262, 266 [38 A.2d 61] ; *Bowen* v. *Yankee Network*, 46 F.Supp. 62, 63; *Bailey* v. *Haberle Congress Brewing Co.*, 193 Misc. 723, 724-725 [85 N.Y.S.2d 51] ; *Alberts*

v. *Remington Rand, Inc.*, 175 Misc. 486, 487 [23 N.Y.S.2d 892] ; *Bristol* v. *Equitable Life Assur. Soc.*, 132 N.Y. 264, 267 [30 N.E. 506, 28 Am.St.Rep. 568].) The material which is used must constitute protectible property if recovery is to be had upon quasi contract (*Booth* v. *Stutz Motor Car Co. of America*, 56 F.2d 962, 969; *Plus Promotions, Inc.* v. *RCA Mfg. Co., Inc.*, 49 F.Supp. 116.) Therefore, the proof necessary to recover upon the theory of a contract implied in law is the same as that required by the tort action for plagiarism. There is no similarity between these productions as to form and manner of expression, the portion which may be protectible property. Thus, because the defendants have used no property belonging to Weitzenkorn, she cannot recover upon a quasi-contractual theory. Had that been the only cause of action stated by the allegations of the second count, the demurrer thereto properly would have been sustained. It is only because the common count includes also facts charging an implied-in-fact contract that the demurrer should have been overruled.

Weitzenkorn complains that it was an abuse of discretion for the trial court to sustain the demurrers without leave to amend. The conclusions which have been reached make it necessary to consider this contention only as to the third count of the complaint. The only evidence of similarity between the productions which can be presented is the productions themselves. Because there is no similarity between them as to protectible portions of Weitzenkorn's composition, no cause of action for plagiarism is or can be stated. Under such circumstances, there was no abuse of discretion in sustaining the demurrer to the third count without leave to amend. (*Routh* v. *Quinn*, 20 Cal.2d 488, 493 [127 P.2d 1, 149, A.L.R. 215].)

The judgment is affirmed as to the third cause of action and reversed as to the first and second causes of action with directions to permit the defendants to answer.

Gibson, C. J., and Shenk, J., concurred.

Traynor, J., and Spence, J., concurred in the judgment.

SCHAUER, J., Concurring.—For the reasons stated in my concurring opinion in *Burtis* v. *Universal Pictures Co., Inc., post,* p. 823 [256 P.2d 933] I concur in the judgment herein and also in those portions of Justice Edmonds' opinion

which are not inconsistent with the views I have particularly indicated.

CARTER, J.—I dissent.

I disagree with the interpretation placed by the majority on the 1947 amendment to section 980 of the Civil Code. That section as it formerly read provided that "The author of any product of the mind, whether it is an invention, or a composition in letters or art, or a design, with or without delineation, or other graphical representation, has an exclusive ownership therein, and in the representation or expression thereof, which continues so long as the product and the representations or expressions thereof made by him remain in his possession." As amended, it read (at the time of this action) that "The author or proprietor of any composition in letters or art has an exclusive ownership in the representation or expression thereof as against all persons except one who originally and independently creates the same or a similar composition." The majority holds that the 1947 amendment has "eliminated the protection formerly given to 'any product of the mind.' The statute as it now exists, and as it read at the time this cause of action arose, provides protection only 'in the representation or expression' of a composition. The Legislature has abrogated the rule of protectibility of an idea and California now accepts the traditional theory of protectible property under common law copyright." It is held that the basic dramatic core is no longer protected but only the "representation or expression"—the development of both characterizations and adventures. This is the method by which the majority has determined that the question of originality shall be decided. It is admitted that a "portion of the 'basic dramatic core' might be found similar" in comparing Weitzenkorn's composition and the motion picture in the instant case, but because of changes in the characterizations, descriptions and events,—what the majority calls the protectible interests involved—the demurrer to the third count (plagiarism) of the complaint was held properly sustained. It has been stated that the policy of the law is to promote the progress of literature by protecting the author against the plagiarist (38 C.L.R. 332), but by minor changes in the sequence of events and the characterizations, the plagiarist may escape liability under this holding that only the *representation or expression of an idea or plot is protected*. This unnecessarily harsh result will not have the effect of promot-

ing the progress of literature. Authors, anxious to find a market for their work, are not in an advantageous bargaining position to insist that the one to whom the composition is submitted sign a contract agreeing to compensate them if the work is used. It can be admitted that the characters Tarzan, Jane and Cheta are well-known, old and in the public domain as is the myth of the Fountain of Youth. A combination of those characters and the myth of the Fountain of Youth—or the basic, central plot—could very easily be considered original, but this court denies protection now to the plot, or central idea, and says that only the expression of the characterizations, events and descriptions is to be protected under the 1947 amendment to section 980 of the Civil Code. The movie industry is constantly looking for ''ideas'' and ''plots'' which it develops as it sees fit. That plots are protectible, see *Shipman* v. *R.K.O. Radio Pictures, Inc.*, 100 F.2d 533, 536-537; *Dam* v. *Kirke LaShelle*, 175 F. 902, 907, 908 [99 C.C.A. 392, 20 Ann.Cas. 1173, 41 L.R.A.N.S. 1002]; *Nichols* v. *Universal Pictures Corp.*, 45 F.2d 119, 121. Even when a book is purchased by the industry and made into a motion picture, the motion picture may differ so radically from the book because of the change in events, characterizations, locale, and conclusion that one who has read the book has difficulty in recognizing any similarity between it and the picture. To extend protection only to the expression and representation is to give no protection at all.

It is admitted in the majority opinion that an idea may be protected by an express contract, but any recovery for breach of that contract depends upon similarity between the two productions. In its statement with respect to the first count, based upon express contract, this court practically directs the trial court to direct the jury to find that Lesser did not promise to pay for Weitzenkorn's production: *''It is conceivable, even though improbable,* that Weitzenkorn might be able to introduce evidence tending to show that the parties entered into an express contract whereby Lesser and Lesser Productions agreed to pay for her production regardless of its protectibility (which is unimportant so far as this court is concerned) and no matter how slight or commonplace the portion which they used. Such evidence, together with comparison of the productions, would present questions of fact for the jury as to the terms of the contract, access, similarity, and copying. Under these circumstances, the facts pleaded

in the first count are sufficient to state a cause of action and the demurrer to it was improperly sustained." (Emphasis added.)

No concise test has ever been laid down for determining the question of originality. It has been said that one requisite is that the work be original in the sense of being the creative product of the author's own effort. There is no requirement that the work be original in the sense of being novel, that is, the first of its kind in existence (Amdur, Copyright Law and Practice, 3, p. 69; *Gerlach-Barklow Co.* v. *Morris & Bendien*, 23 F.2d 159). It has also been said that a composition, or work, to be a subject of copyright protection, must be useful, and its production must have involved independent effort and some judgment, selection, or experience on the part of the author; that many works which are original in the sense of the law would be disdained by the critic, because the latter's standard of originality is based upon a different theory and serves a different purpose; that to entitle a person to a copyright it is not necessary that he be the sole creator of the work for which the protection is claimed—that one who makes material changes, additions, improvements, notes, comments, or a substantially new adaptation or arrangement of an old piece of music, or an abridgment, translation, dramatization, digest, index or concordance of a work is entitled to a copyright for his results (Ball, The Law of Copyright and Literary Property, 111, pp. 237-241). "Although original plots (dramatic situations) were exhausted centuries ago, original and novel ideas for handling old plots seem inexhaustible, and as long as sufficient originality in treatment or handling of the old plot appears the law endeavors to afford protection" (concurring opinion of Mr. Justice Schauer, *Stanley* v. *Columbia Broadcasting System*, 35 Cal.2d 653, 668-669 [221 P.2d 73, 23 A.L.R.2d 216]). Where, as here, plaintiff has combined old elements in a new way, the question of originality should have been submitted to the jury. I do not agree that the 1947 amendment to section 980 of the Civil Code has circumscribed the protection of the law to merely the form and manner of expression of a literary composition.

Insofar as the issue of similarity is concerned, I am of the opinion that the test is still that impression received by the average reasonable man upon a comparative reading of the two productions and that if reasonable minds could differ as to whether or not the two were similar, the question is one of fact and should be submitted to the jury.

Because it is my belief that the majority opinion interprets the 1947 amendment to section 980 of the Civil Code so narrowly as to provide no protection whatever to the products of an author's creative mind and because there is inherent therein too strict a test for determining the issue of similarity between the two productions, I would reverse the entire judgment with directions to the trial court to overrule the demurrers and permit the defendants to answer if they be so advised.

Appellant's petition for a rehearing was denied May 28, 1953. Carter, J., was of the opinion that the petition should be granted.