ALONZO DEEN COLE, Appellant, v. PHILLIPS H. LORD, INC., Respondent.

First Department, June 18, 1941.

*Jay Leo Rothschild* of counsel [*Louis Rivkin* with him on the brief; *Martin J. Desmoni*, attorney], for the appellant.

*N. Henry Josephs* of counsel [*Donald O. Lincoln* with him on the brief; *Josephs, Wilson & Lincoln*, attorneys], for the respondent.

O'MALLEY, J. The principal question to be determined is whether plaintiff, at the close of the entire case, had established *prima facie* that his conception, a combination of ideas expressed in a concrete formula and which bore the title " Racketeer & Com-

pany " (later changed to " 137 Centre Street "), was appropriated by the defendant in its own radio production entitled " Mr. District Attorney."

Plaintiff alleged four causes of action: (1) An express agreement to pay the reasonable value of his creation; (2) an implied agreement to the same effect; (3) an implied agreement predicated upon custom; and (4) an agreement implied in law for compensation for defendant's appropriation of plaintiff's property.

The trial justice at the conclusion of the entire case did not direct a verdict pursuant to the provisions of section 457-a of the Civil Practice Act. He dismissed the complaint, stating that the plaintiff had failed to establish by a fair preponderance of the credible evidence either the essential elements of an express contract or the originality and novelty of the plan sued upon. He further stated that defendant's uncontradicted testimony established that it had developed its own plan independent entirely of plaintiff.

Plaintiff's appeal is predicated upon the claim that the court erred in holding that the defendant by uncontradicted evidence established that it had developed its own plan independent of plaintiff. He asserts, on the other hand, that his evidence, to the effect that he had formulated a combination of ideas expressed in a concrete formula original with himself and which he intrusted to defendant for sale and to which defendant's production, " Mr. District Attorney," was in all respects similar, was practically uncontradicted. In support of this claim, attention is directed to the fact that two, at least, of defendant's representatives who had direct knowledge of the facts did not see fit to take the stand to contradict plaintiff's evidence in several material respects.

Plaintiff's testimony and that of the witness Titterton, who was not only disinterested but might have been partial to the defendant by reason of the fact that his employer, National Broadcasting Company, had purchased the rights to defendant's alleged creation, established that in the radio field there is a well-recognized right to an original idea or combination of ideas, set forth in a formula for a program. Such program contemplates an indefinite number of broadcasts in a series. Each broadcast has a script which represents the dialogue and " business " of that particular broadcast. The idea or the combination of ideas formulated into a program remains constant whereas, of course, the script varies in each separate broadcast.

It is plaintiff's contention that the so-called " frame " of the entire program, which would remain constant throughout the series (each script or broadcast varying) was identical in both his " Racketeer & Company " and " 137 Centre Street " and in

defendant's alleged conception, " Mr. District Attorney; " that the central theme or idea in plaintiff's and defendant's formulæ was the character of a vigorous, crusading district attorney engaged in fighting rackets and racketeers; that this character ran through all the episodes in various scripts and was the hook upon which the entire series was suspended.

Plaintiff also contends that similarities of theme and elements of public appeal other than those already suggested were shown to exist between plaintiff's production and that of the defendant.

Plaintiff does not sue for plagiarism of any particular script or scripts. His contention is that he established *prima facie* a case entitling him to go to the jury on questions of fact as to his having evolved a combination of ideas into a formula for a program under the above-mentioned titles; that he intrusted this formula to defendant for sale and that defendant misappropriated it under the name of " Mr. District Attorney."

In September, 1938, plaintiff, a writer, actor and radio director whose ability was expressly conceded by the defendant, was approached on its behalf by its employee Hanna. The latter had but recently entered defendant's employ as director of programs. He told plaintiff that defendant desired to develop new productions and wanted someone to take charge of its script department.

Plaintiff thereafter conferred with Ives, defendant's vice-president, and informed him that he was not particularly interested in employment in the script department; that if he took such a position it would be only because defendant would act as producer and sales agent for some of his own creations. In this connection plaintiff suggested to Ives that, since it was impossible to make a deal about a script or series before it was actually sold, a so-called yardstick of $500 for a one-half hour commercial script should be adopted.

Concededly, there are two types of programs known to radio broadcasting. A " sustaining " program is one put on by the broadcasting company itself at its own expense in the expectation of interesting a commercial sponsor who will pay for it. When such a commercial sponsor is found, the " sustaining " program becomes " commercial."

Plaintiff testified that Ives agreed that the $500 yardstick for a one-half hour commercial program was fair and that, if plaintiff brought in his scripts or ideas and the defendant should produce and sell them, defendant would handle them on the basis suggested.

Both plaintiff and Titterton testified that this yardstick arrangement (to be applied if the program developed into a " commercial ") was usual in the radio field. In addition, plaintiff's evidence tended to show that should the program be successful the parties

might then mutually agree on new terms. According to custom there would be so-called " uppages " (increases) after a period of approximately thirteen weeks.

Thereafter, Ives reported to plaintiff that Lord, defendant's president, wished to engage plaintiff's services. Plaintiff refused a contract for the reason that he had heard Lord was hard to get along with and that plaintiff did not wish to bind himself to a position which might be difficult to fulfill. He, however, agreed to enter defendant's employ at the rate of $200 a week. This sum has been paid to plaintiff for the period during which he worked — September, 1938, to January, 1939. With this part of the agreement, therefore, we are not concerned.

Ives in an examination before trial corroborated plaintiff respecting (1) his refusal to enter into a firm contract of employment and (2) Ives' agreement to consider new ideas created by plaintiff.

Plaintiff brought in at once his own scripts entitled " The Wanderer," " Racketeer & Company " (here involved), " Mothers of Men " and " Unheavenly Twins." All of these had been written prior to plaintiff's employment, while " Racketeer & Company " had been copyrighted one and one-half years prior thereto. Delivery of these scripts was admitted by Ives.

About a month later, plaintiff delivered to Hanna a revision of " Racketeer & Company " under the title " 137 Centre Street," the address of the district attorney of New York county. It was undisputed that Hanna wanted to change the title to " 15 Billion a Year," that being the alleged amount of which the public annually was mulcted by the so-called rackets. Plaintiff testified that Hanna wrote the suggested title on plaintiff's sample script. This was not denied. Nor was his testimony to the effect that he himself suggested alternative titles, including " Mr. District Attorney," denied. This title, according to plaintiff, had been listed as a possible title for his program late in 1936 or early in 1937, long before he entered defendant's employ.

On October 15, 1938, at a meeting attended by plaintiff, Lord, Ives and Hanna, there was distributed an office circular containing the titles or names of ideas submitted by various members of defendant's staff and which were under consideration by the defendant and still in the course of development. This circular credited Lord with some thirteen subjects or ideas, but " Mr. District Attorney " was not included among them. Plaintiff urges that it is strange indeed that this title was entirely omitted from Lord's list if it had been in the course of preparation for some two years under his supervision. The circular, on the other hand, credited plaintiff with " Racketeer & Company " in addition to " The Witch's Tale," " The Wanderer," " Mothers of Men " and " Darling and Dearie."

Though the defendant maintained that Lord had created "Mr. District Attorney," Ives would not expressly deny that Lord had the script of "Racketeer &. Company" and did admit that Hanna had been talking to him about plaintiff's script on rackets.

It is to be noted that neither Hanna nor Lord took the stand to deny plaintiff's testimony in any respect. There was no testimony from Lord or any member of his staff as to the amount of time he personally, and those who aided him, worked on "Mr. District Attorney" during the two years. There was no office record or written memorandum of any nature produced or offered in support or corroboration of defendant's contention that the work was in the course of development for a period of two years before plaintiff submitted his.

Nor is it contended by defendant that it acquired from plaintiff any rights to his formulated series of ideas in "Racketeer & Company" or "137 Centre Street." Indeed, Ives expressly conceded that it did not. Moreover, it is to be observed that, when defendant sold "Mr. District Attorney" to National Broadcasting Company, it warranted that the title and "the basic idea" were original and did not infringe upon the rights of others. It made the same warranty in an agency contract and represented that the title and basic idea were original. It made the same representations when the sale of the formula was made through an advertising firm to the commercial sponsor.

If plaintiff's "Racketeer & Company" and "137 Centre Street" had the same idea or series of ideas evolved into a program such as "Mr. District Attorney" (as the jury might well have found), certainly they would have been justified in concluding that as between these parties it was plaintiff's original basic idea and formula.

That a property right exists with respect to a combination of ideas evolved into a program, as distinguished from rights to particular scripts, finds support in defendant's own course of conduct. When it transferred any rights to "Mr. District Attorney," it sold not scripts but the basic idea.

The jury might well have been entitled to disregard the testimony of Ives that "Mr. District Attorney" had been in the course of preparation for a period of two years in defendant's own office if it found that defendant's work had the same program formula as plaintiff's. It is to be borne in mind that nothing was said to plaintiff about the fact of the similarity of "Racketeer & Company" and Lord's "Mr. District Attorney." In these circumstances, the jury might well have asked themselves why the defendant did not tell plaintiff, when he submitted to them "Racketeer & Com-

pany " and later " 137 Centre Street," that his formula was the same as defendant's " Mr. District Attorney " which allegedly had been in the course of development by defendant for months prior to the time plaintiff was employed.

We are clearly of the view that plaintiff established *prima facie* an express contract under which he had intrusted his work to defendant. This contract afforded him protection even as to his mere idea. (*Bristol* v. *Equitable Life Assurance Society*, 132 N. Y. 264; *Healey* v. *Macy & Co., Inc.*, 251 App. Div. 440; affd., 277 N. Y. 681.) As already appears, we are here dealing with a specialized field having customs and usages of its own.

We are of opinion also that plaintiff established a case for the jury's consideration on the theory of implied contract. So far as plaintiff was concerned, the agreement was fully executed. He had delivered his program formula under circumstances requiring good faith on the part of defendant. If it was used, he had a right to its reasonable value as determined by the jury. The relationship was one of trust and confidence. (*Underhill* v. *Schenck*, 238 N. Y. 7.)

The contract was not so indefinite as to be unenforcible. (*Cohen & Sons* v. *Lurie Woolen Co.*, 232 N. Y. 112; *Keystone Hardware Corp.* v. *Tague*, 246 id. 79; *Lord* v. *Pathe News, Inc.*, 97 F. [2d] 508.) The yardstick of $500 a half-hour broadcast for a commercial program was agreed upon. Plaintiff would be justified in a recovery on that basis. Furthermore, this yardstick would give some measure of the reasonable value of plaintiff's work which might be adopted by the jury in connection with other evidence in assessing the amount of his damages on the theory of *quantum meruit*.

Issues of fact, therefore, were presented for the jury's consideration in the first instance. (*LaVarre* v. *Warner Bros. Pictures*, 282 N. Y. 68.) The trial justice would not have been justified in directing a verdict in favor of the defendant pursuant to the provisions of section 457-a of the Civil Practice Act. Much less was he justified in granting the motion to dismiss made at the end of the entire case upon the ground that the plaintiff had failed to establish any of his causes of action.

It follows, therefore, that the judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

MARTIN, P. J., TOWNLEY, GLENNON and COHN, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the event.