[Civ. No. 22347.   Second Dist., Div. One.   Dec. 30, 1957.]

DAVID CHANDLER, Appellant, v. HAL ROACH, JR. et al., Respondents.

Pacht, Ross, Warne & Bernhard, Jerry Pacht and Harvey M. Grossman for Appellant.

Mitchell, Silberberg & Knupp and Macklin Fleming for Respondents.

FOURT, J.—This is an appeal from a judgment in favor of defendants in an action instituted by the plaintiff for damages for breach of contract.

The cause of action of the complaint with which we are here concerned was based on an alleged implied-in-fact contract.

A résumé of the facts which are favorable to the plaintiff is as follows: The plaintiff was a professional writer with

a diversified literary experience and extensive educational background. In 1950 he conceived an idea for a dramatic work based on the activities of the public defender's office. He formed a mental picture of an authentic, realistic series based upon the actual operation of the public defender's office in defending indigent persons. He conducted an extensive research of the matter at a library and at the office of the public defender, and discussed the matter with the public defender and others. He obtained written authorization from the public defender himself wherein full cooperation of the office was to be given to the plaintiff. The understanding between the plaintiff and the public defender was later renewed for a three-year term at the request of defendant Roach. Plaintiff Chandler engaged an agent, whose business had to do with the sale of literary material, to the end that the creation could be marketed. The agent met with Roach, a producer of television shows, and gave Roach both an oral and written summary of Chandler's idea. Roach displayed considerable interest in the project and had conferences with Chandler and the agent during the spring and summer of 1951. Chandler sold Roach on the idea of producing a series of television shows, as suggested by Chandler, and the parties proceeded to work out terms under which the series was to be produced. Under the terms, Chandler was to receive for his idea, among other things, a percentage of the receipts from the series and certain other amounts for his services connected therewith. In about July, 1951, Chandler believed that he had a firm deal with Roach. Roach requested of Chandler that he prepare a script immediately for use by Roach in attempting to sell the series to an advertiser. Chandler prepared the script and later revised it to meet with suggestions of Roach. To the end that the parties might solidify the understanding and agreement between them, Roach had his attorneys draft a written contract which he sent to Chandler. Chandler suggested certain changes in the instrument, and the attorneys for Roach prepared a second written contract which he sent to Chandler. Sometime thereafter, the agent got sick and retired from the agency business. Chandler did not hear from Roach with reference to the material which had been furnished. In the summer of 1953, at a chance meeting, Roach told Chandler that the trouble with Public Defender was "that it was too good an idea."

Roach never paid Chandler for his ideas or for his services,

among the latter, the preparation of the scripts. Roach thereafter produced a series of 69 television programs along the lines suggested by Chandler. On April 26, 1954, the present action was commenced.

At the conclusion of the trial the parties submitted instructions with reference to implied-in-fact contracts. The instructions submitted by the defendants set forth in essence two basic requirements for the establishment of an implied-in-fact contract, namely, novelty and concreteness. After considerable deliberation, and after having the instructions above mentioned re-read to them, the jury returned a nine to three verdict in favor of the defendants.

The instructions offered by the defendants and given, and of which the plaintiff particularly complains, read as follows:

"Plaintiff charges that he submitted the idea of a public defender television series to Mr. Roach under such circumstances that Mr. Chandler expected the idea to be paid for if used and that Mr. Roach expected to pay for the idea if used.

"An implied contract to pay for an idea may arise between parties based on their relationships and dealings if the idea meets two conditions: (1) The idea must have novelty, and (2) the idea must have sufficient concreteness to identify it as plaintiff's particular creation.

"A contract to pay for an idea may be created by implication only if the idea satisfies both the requirement of novelty and that of concreteness."

"If you find that Mr. Chandler's idea of a public defender television series possessed novelty when submitted to Mr. Roach, then, provided the idea also meets the requirement of concreteness, the basis would exist for implying a contract to pay for the idea. If, on the other hand, you find that when the idea of a public defender television series was submitted to Mr. Roach it did not possess novelty for Mr. Roach but on the contrary was an idea with which he was already familiar and which he had considered independently, then no basis would exist for implying a contract to pay for such an idea."

"I shall explain the reasons for the need for novelty in an idea before implying a contract to pay for it. An implied contract differs from an express contract in that the promise is not expressed in language but is implied from conduct. An implied contract thus involves evaluation and interpretation of human conduct.

"In the field of ideas it is a reasonable implication that producers of entertainment will pay for new ideas of commercial value, but there is no basis for an inference that they will agree to pay for the use of an idea regardless of whether it is novel or shopworn, fresh or commonplace. It is not a reasonable assumption that anyone would obligate himself to pay for a common idea he would otherwise be free to use.

"Accordingly, the law requires novelty in an idea before a promise to pay for it will be implied from the conduct of the parties."

"What is novelty?

"By novelty is meant that an idea, at least insofar as it relates to the defendant, is new, fresh and original. Novelty is the opposite of shopworn, hackneyed and commonplace."

"In addition to the requirement of novelty, an implied contract to pay for an idea must satisfy the further requirement of concreteness. By concreteness is meant sufficient development of the idea to give it identifying characteristics. That is to say the bare skeleton of an idea must have enough flesh and blood to come to life. The development of an idea into concrete form involves a combination of characters, locale and myth. Only after such development has taken place does the idea assume sufficient outline and clarity to become capable of recognition and acquire characteristics of its own."

"A contract to pay for a general idea cannot be created by implication unless there is sufficient concreteness to particularize and identify the idea as a unique production of plaintiff's effort rather than a general idea possessed by many."

"If you find that plaintiff presented a concrete and novel idea to defendants, and that the idea had value to the defendants, and that the idea was used by defendants, and if you find an implied promise by the defendants to pay plaintiff for that idea if used, then you will find for the plaintiff."

Appellant contends that the giving of such instructions, under the circumstances, constituted prejudicial error. Appellant also contends that the giving of certain instructions with reference to the statute of limitations was error. We are of the opinion that the appellant is correct.

A contract is either express or implied (Civ. Code, § 1619).

An express contract is one, the terms of which are stated in words (Civ. Code, § 1620).

An implied-in-fact contract is one, the existence and terms of which are manifested by conduct (Civ. Code, § 1621).

440

Other pertinent sections of the Civil Code are as follows:

"§ 1584. Performance of the conditions of a proposal, or the acceptance of the consideration offered with a proposal, is an acceptance of the proposal."

"§ 1589. A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting."

"§ 1605. Any benefit conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

"§ 1606. An existing legal obligation resting upon the promisor, or a moral obligation originating in some benefit conferred upon the promisor, or prejudice suffered by the promisee, is also a good consideration for a promise, to an extent corresponding with the extent of the obligation, but no further or otherwise."

■ In *Weitzenkorn* v. *Lesser,* 40 Cal.2d 778, at page 794 [256 P.2d 947], the court stated:

"It is unnecessary for the pleading to distinguish between the contract implied in fact and the contract implied in law, or quasi contract, but the elements which must be proved for recovery upon each of them are quite different. *The only distinction between an implied-in-fact contract and an express contract is that, in the former, the promise is not expressed in words but is implied from the promisor's conduct. (Silva* v. *Providence Hospital of Oakland,* 14 Cal.2d 762, 773 [97 P.2d 798]; *Smith* v. *Moynihan,* 44 Cal. 53, 62; *Grant* v. *Long,* 33 Cal.App.2d 725, 736-737 [92 P.2d 940]; Civ. Code, §§ 1619-1621.) *Under the theory of a contract implied in fact, the required proof is essentially the same as under the first count upon express contract, with the exception that conduct from which the promise may be implied must be proved. (Cole* v. *Lord, Inc., supra* [262 App.Div. 116 (28 N.Y.S.2d 404)].)* " (Emphasis added.)

■ The essential elements of an implied-in-fact contract and an express contract are the same, namely, mutual assent and consideration. ■ In a case such as the one before us, the assent of the writer is found in his submission of the idea or material to the producer, with the reasonable expectation of payment which can be inferred from the facts and

circumstances. The assent of the producer is manifested by his acceptance of the idea or material submitted under the circumstances, a part of which is that it is reasonably understood that a professional author expects payment of the reasonable value of the idea or the material, if used, so that the conduct of the producer in accepting it implies a promise to fulfill those reasonable expectations.

■ As to the consideration, it was said in the Weitzenkorn case, *supra*, at pages 791-792:

*"An 'idea, if valuable, may be the subject of contract. While the idea disclosed may be common or even open to public knowledge, yet such disclosure if protected by contract, is sufficient consideration for the promise to pay.' (High* v. *Trade Union Courier Pub. Corp.,* 69 N.Y.S.2d 526, 529, affd. 89 N.Y.S.2d 527; *Cole* v. *Lord, Inc.,* 262 App.Div. 116, 121 [28 N.Y.S.2d 404]; *Schonwald* v. *F. Burkart Mfg Co.,* 356 Mo. 435, 448 [202 S.W.2d 7]; *Brunner* v. *Stix, Baer & Fuller Co.,* 352 Mo. 1225, 1232 [181 S.W.2d 643].)"

And as said by Justice Traynor in his dissent in *Stanley* v. *Columbia Broadcasting System,* 35 Cal.2d 653, at page 674 [221 P.2d 73, 23 A.L.R.2d 216]:

"The policy that precludes protection of an abstract idea by copyright does not prevent its protection by contract. Even though an idea is not property subject to exclusive ownership, its disclosure may be of substantial benefit to the person to whom it is disclosed. That disclosure may therefore be consideration for a promise to pay. (Citing cases.) Unlike a copyright, a contract creates no monopoly; it is effective only between the contracting parties; it does not withdraw the idea from general circulation. Any person not a party to the contract is free to use the idea without restriction.

"Even though the idea disclosed may be 'widely known and generally understood' . . ., it may be protected by an express contract providing that it will be paid for regardless of its lack of novelty. . . . An implied-in-fact contract differs from an express contract only in that the promise is not expressed in language but implied from the promisor's conduct."

■ We believe that if a producer obligates himself to pay for the disclosure of an idea, whether it is for protectible or unprotectible material, in return for a disclosure thereof he should be compelled to hold to his promise. There is nothing unreasonable in the assumption that a producer would obligate himself to pay for the disclosure of an idea which he would otherwise be legally free to use, but which

in fact, he would be unable to use but for the disclosure.

The producer and the writer should be free to make any contract they desire to make with reference to the buying of the ideas of the writer; the fact that the producer may later determine, with a little thinking, that he could have had the same ideas and could thereby have saved considerable money for himself, is no defense against the claim of the writer. This is so even though the material to be purchased is abstract and unprotected material.

In the instant case, the plaintiff has repeatedly pointed out that he now makes no claim of any property right in the idea in question, that his claim is based upon the proposition that he disclosed the idea to Roach, who invited or induced the disclosure by a promise to pay for it if used. If Roach's conduct shows an assent, appellant asserts, and we think correctly, that the element of consideration has been satisfied.

In short, respondents insist that to have an implied-in-fact contract in the field in question, there must exist in the idea or material the element of novelty and concreteness. Appellant asserts that no such elements are required.

In *Desny* v. *Wilder*, 46 Cal.2d 715, at page 744 [299 P.2d 257], the court said:

"It is not essential to recovery that plaintiff's story or synopsis possess the elements of copyright protectibility if the fact of consensual contract be found. (*Weitzenkorn* v. *Lesser* (1953), *supra*, 40 Cal.2d 778, 791-792.)" And as Justice Traynor said, in the Stanley case, *supra*, at page 681: "It is not for the court to consider the quality of an idea or to pass judgment on the public's taste; the problem before it is not one of aesthetics but one of property rights." In the present case, it is "contract rights" rather than "property rights" with which we are concerned, but the reasoning applies with equal force.

We are not here concerned with whether the idea or material was used by Roach because that was solely a question of fact. Apparently the trial judge thought that there was enough evidence for the case to go to the jury on the matter, for he denied the defendants' motion for a nonsuit.

In our opinion, the terms of the contract were for the jury to decide. As said in *Kurlan* v. *Columbia Broadcasting System*, 40 Cal.2d 799, at page 810 [256 P.2d 962], "The terms of the contract and the content of the programs present questions of fact for the jury as to the contractual provisions, access, similarity, and copying."

■ The Legislature, in 1947, amended section 980 of the Civil Code, and thereby abrogated the rule of protectibility of an idea, and as a consequence thereof about the only protection a writer now has in his work is by the implied-in-fact contract procedure. We see no necessity to add the elements of novelty and concreteness to implied-in-fact contracts with reference to authors. Their status should be identically the same as that of any other person in any other implied-in-fact contract situation. In other words, the courts should not engraft to the requirements, in the case of authors, something which neither party has contemplated and which is not a requirement in any other form of implied-in-fact contract; the courts should permit the parties to contract with each other as they see fit and should not arbitrarily inject into the contract the requirements that the idea be novel and concrete. If the parties have so agreed, that presents a different situation and becomes a question of fact for the jury to decide. As one writer has aptly put it:

"One source of protection for literary artists has been statutory copyright. This form requires that the work be published. A second protection worked out by the common law is that of common law copyright. This protection gives the author or proprietor of a composition in letters or arts an exclusive ownership until general publication in the representation or expression thereof, as against all persons except those who originally and independently create the same or a similar composition. Today, many states have statutes embodying common law copyright. (Cal. Civ. Code (1949), § 980.) These protections have never been extended to ideas because it is said there is no property right in an idea.

"In many courts it is now being argued by literary artists that they must have some form of protection for their ideas. They argue that in motion picture story writing and television program writing, it has become necessary to submit ideas to the show producers, and not develop them into complete works until and unless they are approved.

"Recognizing the problem faced by many writers, the courts are trying to work out a protection that does not run afoul of the historical concept that there is no property right in an idea. This they are doing by enforcing express or implied in fact contracts for the use of ideas. 'If it [the idea] cannot be sold or negotiated or used without a disclosure, it would seem proper that some contract should guard or regulate the disclosure.'

"The test for a property right, applied in common law copyright cases, is that the work be new, novel and in concrete form. Instead of maintaining the distinction between protection of a property right by common law copyright and protection of an idea by contract, many courts are applying this common-law test in cases involving contracts. When the action is on a contract theory and this test is invoked the court is using it as part of a process which was specifically developed to avoid the consequences of the test. The result is that if a person brings his suit under the new theory and proves that his idea was new, novel and concrete, he often could have recovered under the broader protection of common law copyright. This must be true unless a distinction can be made between a new and novel idea in concrete form and a new, novel and concrete representation or expression of a composition.

"Not only is this property right test not a part of any traditional contract action, but there is no reason for adopting such a test in this particular type of contract action. The reason for the requirement in common law copyright was that to have a remedy good against the world, a property right must be shown. This reason for the test is missing in an action on a contract. 'Unlike a copyright, a contract creates no monopoly; it is effective only between the contracting parties; it does not withdraw the ideas from general circulation. Any person not a party to the contract is free to use the idea without restriction.' To apply the novelty test to the consideration for a contract is in effect questioning the adequacy of the consideration, a practice traditionally not allowed by the courts. All that needs to be shown is that the idea has sufficient concreteness so as not to be too vague to be the consideration for a contract.

. . . . . . . . . . . . .

"... *To persist in applying the old requirements of common law copyright just because both doctrines are for the protection of literary property seems unwise when the result is to nullify the benefit of the new doctrine.*" (26 So.Cal. L.Rev., pp. 459-461.) (Emphasis added.)

We see no reason to impose blindly and automatically upon the implied-in-fact contract the elements which may be necessary to establish a property right.

As to the second contention, the court, during the trial, permitted the defendants to add the defense of the statute of limitations. A reading of the record discloses no evidence

to indicate that the plaintiff's case was barred by the statute of limitations. As a consequence, the instruction given was erroneous.

For the reasons above set forth we are of the opinion that the instructions in question were prejudicially erroneous, and that the judgment should be reversed.

Judgment reversed.

White, P. J., and Drapeau, J.,* concurred.

Respondents' petition for a hearing by the Supreme Court was denied February 26, 1958. Schauer, J., was of the opinion that the petition should be granted.

*Assigned by Chairman of Judicial Council.