**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LARRY MONTZ; DAENA SMOLLER,
    *Plaintiffs-Appellants,*

v.

PILGRIM FILMS & TELEVISION, INC.;
NBC UNIVERSAL, INC.; CRAIG
PILIGIAN; JASON CONRAD HAWES;
UNIVERSAL TELEVISION NETWORKS,
    *Defendants-Appellees.*

No. 08-56954

D.C. No.
2:06-cv-07174-
FMC-MAN

OPINION

Appeal from the United States District Court
for the Central District of California
Florence-Marie Cooper, District Judge, Presiding

Argued and Submitted
December 16, 2010—Pasadena, California

Filed May 4, 2011

Before: Alex Kozinski, Chief Judge, Mary M. Schroeder,
Stephen Reinhardt, Diarmuid F. O'Scannlain,
Sidney R. Thomas, Kim McLane Wardlaw,
Ronald M. Gould, Richard A. Paez, Richard C. Tallman,
Carlos T. Bea, and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Schroeder;
Dissent by Judge O'Scannlain;
Dissent by Judge Gould

## COUNSEL

Howard B. Miller (argued), Graham B. LippSmith and Joseph C. Gjonola, Los Angeles, California, and Martin N. Buchanan, San Diego, California for plaintiffs-appellants Larry Montz and Daena Smoller.

Gail Migdal Title (argued), Joel R. Weiner and Gloria C. Franke, Los Angeles, California, for defendants-appellees Pilgrim Films & Television, Inc., et al.

David Aronoff, Los Angeles, California, for amici curiae Reveille LLC et al.

Lee S. Brenner and Allison S. Brehm, Los Angeles, California, for amici curiae American Broadcasting Companies, Inc., et al.

Robert H. Rotstein and Andrew Spitser, Los Angeles, California, for amicus curiae The Motion Picture Association of America, Inc.

## OPINION

SCHROEDER, Circuit Judge:

In Hollywood, writers commonly submit copyrighted scripts to producers with the understanding that if the script is used, the producer must compensate the writer for the use of the copyrighted material. But what happens when the producer uses the idea or concept embodied in the script, but doesn't pay? The Supreme Court of California, in 1956, answered this question by recognizing an implied contractual right to compensation when a writer submits material to a producer with the understanding that the writer will be paid if the producer uses the concept. *Desny v. Wilder*, 299 P.2d 257 (Cal. 1956).

A so-called "*Desny* claim" has remained viable under California law for over fifty years. *See Gunther-Wahl Productions, Inc. v. Mattel, Inc*, 104 Cal. App. 4th 27 (2002). This court applied that California law in *Grosso v. Miramax Film Corp.*, 383 F.3d 965 (9th Cir. 2004), *amended* 400 F.3d 658 (9th Cir. 2005), *cert. denied* 546 U.S. 824 (2005), where we held that such an implied contractual claim is not preempted by federal copyright law. We explained that the contractual claim requires that there be an expectation on both sides that use of the idea requires compensation, and that such bilateral understanding of payment constitutes an additional element that transforms a claim from one asserting a right exclusively protected by federal copyright law, to a contractual claim that is not preempted by copyright law. *Grosso* has firm roots in our federal law as well as in the California law. Earlier, we recognized that a claim for unjust enrichment is essentially equivalent to a claim of copyright infringement and is therefore preempted. *See Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987), *overruled on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). Yet we had also recognized a claim for breach of contract that was not preempted where the plaintiff establishes he

had a reasonable expectation of payment for use. *Landsberg v. Scrabble Crossword Game Players, Inc.*, 802 F.2d 1193, 1196-97 (9th Cir. 1986).

We recently followed *Grosso* in *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620 (9th Cir. 2010), and held a contractual claim was not preempted. We said that "[c]ontract law, whether through express or implied-in-fact contracts, is the most significant remaining state-law protection for literary or artistic ideas." *Id.* at 629. The three judge panel in this case, however, found a similar claim preempted.

We again hold that copyright law does not preempt a contract claim where plaintiff alleges a bilateral expectation that he would be compensated for use of the idea, the essential element of a *Desny* claim that separates it from preempted claims for the use of copyrighted material. We see no meaningful difference between the conditioning of use on payment in *Grosso* and conditioning use in this case on the granting of a partnership interest in the proceeds of the production. Montz, as did the plaintiffs in *Desny* and *Grosso*, has alleged he revealed his concept to defendants reasonably expecting to be compensated, if his concept was used. We conclude that the district court's judgment dismissing the contractual claim as preempted must be reversed.

Plaintiffs' complaint also alleged a claim under California law for breach of confidence. The district court dismissed it as preempted, as well, and the panel affirmed. We also reverse the judgment dismissing that claim and remand both for further proceedings.

## I.   Factual Background

In 1981, Plaintiff Larry Montz, a parapsychologist, conceived of an idea for a television show that would follow a team of paranormal investigators conducting field investigations. As envisioned, each episode would follow the team to

different real-world locations, where they would use magnetometers, infrared cameras, and other devices to investigate reports of paranormal activity. According to the complaint, from 1996 to 2003, Montz and Plaintiff Daena Smoller, a publicist and a producer, pitched Montz's idea to television studios, producers, and their representatives, including representatives of NBC and the Sci-Fi channel. A number of meetings and discussions took place, and Montz and Smoller presented screenplays, videos, and other materials relating to their proposed show. Ultimately, the studios indicated that they were not interested.

Three years later, in November 2006, Montz and Smoller filed a complaint against Pilgrim Films & Television, Inc., NBC Universal Inc., Craig Piligian, Jason Conrad Hawes, and ten unknown defendants in federal district court, alleging copyright infringement, breach of implied contract, breach of confidence, and several other causes of action. According to the complaint, after the meetings with Montz and Smoller, NBC partnered with Piligian and Pilgrim to produce a series on the Sci-Fi Channel based on the plaintiffs' materials. The show, called *Ghost Hunters*, starred Hawes as the leader of a team of investigators who travel across the country to study paranormal activity.

Plaintiffs' complaint specifically alleged that defendants breached an implied-in-fact contract. The complaint described the terms of the agreement:

> Plaintiffs communicated their ideas and creative concepts for the "Ghost Hunters" Concept to the Defendants, pursuant to the standard custom and practice in the industry with respect to the exchange of creative ideas, under the following terms:
>
> a. that Plaintiffs' disclosure of their ideas and concepts was strictly confidential;

b. that the Defendants would not disclose, divulge or exploit the Plaintiffs' ideas and concepts without compensation and without obtaining the Plaintiffs' consent; and

c. that, by accepting the Plaintiffs' disclosure of its concept, the Defendants accepted and agreed to abide by the foregoing terms.

Compl. at ¶ 46. The complaint further alleged that plaintiffs presented the concept on the express condition that they made the presentation as an offer to partner with the defendants and that plaintiffs justifiably expected to receive a share of the profits derived from any use of the idea:

The Plaintiffs presented their ideas for the "Ghost Hunter" Concept to the Defendants' [sic] in confidence, pursuant to the custom and practice of the entertainment industry, for the express purpose of offering to partner with the Defendants in the production, broadcast and distribution of the Concept. Accordingly, the Plaintiffs justifiably expected to receive a share of any profits and credit that might be derived from the exploitation of its ideas and concepts for the Concept.

*Id.* at ¶ 47. The dissent appears to overlook these clear allegations that compensation was expected in accord with industry practice.

Plaintiffs also alleged that defendants breached their confidential relationship "by taking Plaintiffs' novel ideas and concepts, exploiting those ideas and concepts, and profiting therefrom to the Plaintiffs' exclusion . . . ." *Id.* at ¶ 59. The complaint therefore alleged a claim under California law of breach of confidence.

## II.  Procedural Background

Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The district court granted in part and denied in part the defendants' motion. The court concluded that the complaint alleged facts sufficient to state a federal copyright claim, but that federal copyright law preempted the plaintiffs' state-law claims. The court dismissed the state-law claims with prejudice and without leave to amend.

Plaintiffs amended their copyright claim and added Universal Television Networks as a defendant. Subsequently, the parties stipulated to the voluntary dismissal of the amended copyright claim with prejudice. With no remaining claims to be adjudicated, the district court entered final judgment in favor of the defendants. The plaintiffs timely appealed the dismissal of their breach of implied contract and breach of confidence claims.

On June 3, 2010, the three-judge panel affirmed, holding both claims preempted by federal copyright law. *Montz v. Pilgrim Films & Television, Inc.*, 606 F.3d 1153, 1158 (9th Cir. 2010). We ordered a rehearing of this case en banc pursuant to a vote of the majority of active judges. *See* 28 U.S.C. § 46(c) and Fed. R. App. P. 35.

## III.  California Implied-in-Fact Contract Law

Writers in the Hollywood film industry often submit scripts to producers, or set up meetings with them, in the hope of selling them scripts and concepts for movies. The practice has carried over into television. Since the writer is looking for someone to turn the written work into an entertainment production, writers often pitch scripts or concepts to producers with the understanding that the writer will be paid if the material is used. Since an idea cannot be copyrighted, a concept

for a film or television show cannot be protected by a copyright. 17 U.S.C. § 102. But the concept can still be stolen if the studio violates an implied contract to pay the writer for using it.

**[1]** In *Desny*, the California Supreme Court recognized that a writer and producer form an implied contract under circumstances where both understand that the writer is disclosing his idea on the condition that he will be compensated if it is used. 299 P.2d at 270. There, defendant Billy Wilder, famed director of *Sunset Boulevard* and *Witness for the Prosecution*, allegedly entered into an implied contractual arrangement that was initiated when the plaintiff telephoned Wilder's office and pitched a movie idea to Wilder's secretary who, along with Wilder, understood Wilder was to pay if he used the story. *Id.* at 273-74. Wilder produced a film, *Ace in the Hole*, allegedly based on the idea plaintiff had pitched for a movie inspired by the "life story of Floyd Collins who was trapped [in a cave] and made sensational news for two weeks." *Id.* at 262. Wilder allegedly failed to compensate the plaintiff, and the California Supreme Court held that, given the entertainment industry norms, the plaintiff had sufficiently pled the breach of an implied contract to pay for use of his idea. The issue here is whether copyright law now preempts such claims.

## IV.   Copyright Preemption

**[2]** The Copyright Act of 1976 expressly preempts state claims where the plaintiff's work "come[s] within the subject matter of copyright" and the state law grants "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(a); *see Grosso*, 383 F.3d at 968. As to the first requirement, the leading treatise in this field recognizes that the scope of the subject matter of copyright law is broader than the protections it affords. *See* 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 19D.03[A][2][b] (rev. ed. 2010) ("[T]he

shadow actually cast by the Act's preemption is notably broader than the wing of its protection." (quoting *U.S.* ex rel *Berge v. Bd. of Trs. of Univ. of Ala.*, 104 F.3d 1453, 1463 (9th Cir. 1997))). Nevertheless, the scope of copyright subject matter does not extend to ideas that are not within a fixed medium. Section 301(b) specifically excludes non-fixed ideas from the Copyright Act's scope; the statute describes "works of authorship not fixed in any tangible medium of expression" as "subject matter that does not come within the subject matter of copyright." 17 U.S.C. § 301(b). Ideas that are still purely airborne are thus not even within the subject matter of copyright. Once an idea has been written down or otherwise recorded, however, we have recognized that it satisfies the Copyright Act's writing requirement because it is fixed in a tangible medium. *See In re World Auxiliary Power Co.*, 303 F.3d 1120, 1131 (9th Cir. 2002) ("[C]opyright is created every time people set to paper, or fingers to keyboard, and affix their thoughts in a tangible medium . . .").

**[3]** For preemption purposes, ideas and concepts that are fixed in a tangible medium fall within the scope of copyright. *See* Nimmer § 19D.03[A][3]. We agree with Nimmer that state-law protection for fixed ideas falls within the subject matter of copyright and thus satisfies the first prong of the statutory preemption test, despite the exclusion of fixed ideas from the scope of actual federal copyright protection. *See* 17 U.S.C. § 102 ("In no case does copyright protection for an original work of authorship extend to any idea . . . [or] concept . . . embodied in such work."

**[4]** Accordingly, the major focus of litigation has been on the second prong of the preemption test: whether the asserted state right is equivalent to any of the exclusive rights within the general scope of copyright. *See Grosso*, 368 F.3d at 968. To survive preemption, a state cause of action must assert rights that are qualitatively different from the rights protected by copyright. In *Grosso,* we held that the rights created under California law emanating from *Desny* were qualitatively dif-

ferent from the rights protected by federal copyright law because a *Desny* claim includes an added element: an agreement to pay for use of the disclosed ideas. *Id.* at 967, 968; Nimmer at § 19D.03[C][2]. Contract claims generally survive preemption because they require proof of such an extra element. *See Benay*, 607 F.3d at 629. The extra element, the implied agreement of payment for use of a concept, is a personal one, between the parties.

The California Courts of Appeal have uniformly concluded that *Desny* claims are not preempted because they flow from agreements and understandings different from the monopoly protection of copyright law. *See Rokos v. Peck*, 182 Cal. App. 3d 604, 617 (1986) ("[T]he rights flowing from such an agreement are qualitatively different from copyright protection, and their recognition creates no monopoly in the ideas involved."); *see also Durgom v. Janowiak*, 74 Cal. App. 4th 178, 186-87 (1999). The California decisions focus on the personal nature of the relationship formed in idea submission cases: "The creation of an implied-in-fact contract between an author, on the one hand, and an agent, producer, or director, on the other hand, is of such a personal nature that it is effective only between the contracting parties." *Rokos*, 182 Cal. App. 3d at 617 (citing *Chandler v. Roach*, 156 Cal. App. 2d 435, 441 (1957)). Thus, it is unlike a copyright that is a public monopoly. *See also ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454 (7th Cir. 1996) ("A copyright is a right against the world. Contracts, by contrast, generally affect only their parties; strangers may do as they please, so contracts do not create 'exclusive rights.' "). The rights protected under federal copyright law are not the same as the rights asserted in a *Desny* claim, and the California state courts have recognized this consistently over the decades.

In recent years, litigation has, not surprisingly, moved to the federal courts where defendants have hoped for greater success in pressing for copyright preemption. *See* Glen L. Kulik, *Copyright Preemption: Is This the End of* Desny v.

Wilder*?*, 21 Loy. L.A. Ent. L. Rev. 1, 14 (2000) ("[B]ecause idea submission cases are now regularly removed to federal court, it is unlikely state courts will address the issue." (footnote omitted)). Defendants were initially quite successful in federal court. *See, e.g.*, *Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1061-62 (C.D. Cal. 2000); *Endermol Entm't v. Twentieth Television Inc.*, 48 U.S.P.Q.2d 1524, 1528 (C.D. Cal. 1998); *Worth v. Universal Pictures, Inc.*, 5 F. Supp. 2d 816, 822 (C.D. Cal. 1997) ("Movie screenplays, the subject matter at issue, are encompassed within the federal copyright law. Therefore, Plaintiffs' cause of action for breach of implied contract is preempted.").

**[5]** In a later case, however, a district court held that an implied-in-fact contract claim survived Copyright Act preemption because it was substantively different from a copyright claim: "[T]he whole purpose of the contract was to protect Plaintiff's rights to his ideas beyond those already protected by the Copyright Act . . . ." *Groubert v. Spyglass Entm't Group*, No. CV 02-01803, 2002 WL 2031271, at *4 (C.D. Cal. July 23, 2002). Nimmer expressly approved this decision. *See* Nimmer § 19D.03[c][2]. We agreed with this assessment when we decided in *Grosso* that copyright law does not preempt an implied contractual claim to compensation for use of a submitted idea. We reaffirm that rule today.

**[6]** This approach not only accords with the Copyright Act's preemption guidelines, but it also recognizes the gap that would otherwise exist between state contract law and copyright law in the entertainment industry. The *Desny* innovation serves to give some protection for those who wish to find an outlet for creative concepts and ideas but with the understanding that they are not being given away for free. Without such legal protection, potentially valuable creative sources would be left with very little protection in a dog-eat-dog business. *See* Woody Allen, CRIMES AND MISDEMEANORS (Orion Pictures 1989) ("Show business is worse than dog-eat-dog. It's dog-doesn't-return-other-dog's-phone-calls."). Thus

we were correct when we observed that "[c]ontract law, whether through express or implied-in-fact contracts, is the most significant remaining state-law protection for literary or artistic ideas." *Benay*, 607 F.3d at 629. The dissent misses the point when it tries to limit protection to those who seek payment, and exclude the plaintiffs who want a piece of the action and contractual agreement on the terms of the defendant's use.

**[7]** Plaintiffs' claim for breach of confidence also survives copyright preemption. The claim protects the duty of trust or confidential relationship between the parties, an extra element that makes it qualitatively different from a copyright claim. *See Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992); *Fischer v. Viacom Int'l, Inc.*, 115 F. Supp. 2d 535, 542 (D. Md. 2000); *Berkla v. Corel Corp.*, 66 F. Supp. 2d 1129, 1150-51 (E.D. Cal. 1999); Nimmer at § 19D.03[C][1].

## V. Sufficiency of the Complaint as to the Breach of Implied Contract and Breach of Confidence Claims

Defendants argue that the complaint fails to allege sufficient facts to make out a claim for breach of implied contract. They assert that it lacks any allegation (1) that Montz and Smoller disclosed their idea for sale, (2) that they expected to be reasonably compensated for the idea, and (3) that defendants knew the conditions on which it was offered. Yet the complaint makes all three allegations and closely tracks the complaint we found sufficient in *Grosso.*

Defendants similarly argue that Montz and Smoller failed to allege sufficient facts to make out their claim for breach of confidence. They argue that there is no allegation (1) that plaintiffs disclosed "confidential and novel information," and (2) that defendants knew it was supposed to be kept confidential. *See Entm't Research Grp., Inc. v. Genesis Creative Grp.,*

*Inc.*, 122 F.3d 1211, 1227 (9th Cir. 1997). But the complaint clearly contains these allegations as well.

## VI. Conclusion

The judgment of the district court is **REVERSED** and the matter **REMANDED** for further proceedings on plaintiffs' remaining claims.

---

O'SCANNLAIN, Circuit Judge, Joined by GOULD, TALLMAN AND BEA, Circuit Judges, dissenting:

Montz does not claim to have sold his rights as a copyright owner. To the contrary, he alleges that he retained those rights, and that Pilgrim implicitly promised *not* to use or to disclose his ideas *without his consent*. As the district court properly held, an action to enforce a promise not to use or to disclose ideas embodied in copyrighted material without authorization asserts rights equivalent to those protected by the Copyright Act. Accordingly, the district court's determination that the Copyright Act preempts Montz's claims should be affirmed. I respectfully dissent from the Court's opinion to the contrary.

I

A state law claim is preempted if the rights asserted under state law "come within the subject matter of copyright," as described in 17 U.S.C. §§ 102 and 103, and are "equivalent" to the exclusive rights of copyright owners specified in 17 U.S.C. § 106. 17 U.S.C. § 301(a); *see also Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006). The district court ruled that both of Montz's state law claims—which assert rights to ideas embodied in screenplays, videos, and other tangible media—come within the "subject matter of copyright." As the en banc court agrees with this ruling, I

shall address only the second prong: whether Montz's claims are "equivalent" to the exclusive rights afforded to copyright owners by section 106.[1]

## A

Montz's breach-of-implied-contract claim consists of the following allegations: (1) "[t]he Plaintiffs presented their ideas for the 'Ghost Hunter' Concept to the Defendants[ ] in confidence, pursuant to the custom and practice of the entertainment industry, for the express purpose of offering to partner with the Defendants in the production, broadcast and distribution of the Concept," (2) "by accepting the Plaintiffs' disclosure of its concept," the defendants agreed that they "would *not* disclose, divulge or exploit the Plaintiffs' ideas and concepts without compensation and *without obtaining the Plaintiffs' consent*," (3) "the Plaintiffs justifiably expected to receive a share of any profits and credit that might be derived from the exploitation of [their] ideas and concepts," and (4) "by producing and broadcasting the Concept," "[t]he Defendants breached their implied agreement not to disclose, divulge or exploit the Plaintiffs' ideas and concepts *without the express consent of the Plaintiffs*, and to share with the Plaintiffs . . . the profits and credit for their idea and concepts." (emphasis added).

To distinguish itself from a copyright claim, a state law

---

[1]Although the allegations specific to Montz's breach-of-implied-contract claim refer only to "ideas" and "concepts"—which in the abstract are not subject to copyright protection, *see* 17 U.S.C. § 102(b)—it is clear from the complaint that Montz presented his "ideas" and "concepts" through television screenplay treatments, video, and other ancillary pre-production materials. Such materials qualify for copyright protection under section 102(a) as "original works of authorship fixed in [a] tangible medium of expression." Accordingly, the district court and the majority are correct that the rights asserted under Montz's breach-of-implied-contract claim "come within the subject matter of copyright" as described in section 102.

claim "must protect rights which are qualitatively different from the copyright rights." *Laws*, 448 F.3d at 1143 (internal quotation marks omitted). This requires that the state claim have an "extra element which transforms the nature of the action." *Id.* (internal quotation marks omitted). Montz's breach-of-implied-contract claim fails this test.

Under section 106, a copyright owner has the exclusive rights to reproduce, to distribute, and to display the copyrighted work, as well as to prepare derivative works based on the copyrighted work. 17 U.S.C. § 106. Section 106 also provides a copyright owner with the exclusive rights to authorize such reproduction, distribution, display, and preparation. *Id.* Montz alleges that "by producing and broadcasting" *Ghost Hunters*, "[t]he Defendants breached their implied agreement not to disclose, divulge or exploit the Plaintiffs' ideas and concepts without the[ir] express consent." In other words, Montz asserts that Pilgrim produced and broadcast a television program derived from Montz's screenplays, video, and other materials *without authorization*. These rights are equivalent to the rights of copyright owners under section 106— namely, the exclusive rights to authorize reproduction, distribution, and display of original works, and to authorize preparation of derivative works. *See Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987), *overruled on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ("[A]n implied promise not to use or copy materials within the subject matter of copyright is equivalent to the protection provided by section 106 of the Copyright Act.").

B

With respect, I suggest the majority does not appreciate the significance of Montz's refusal to authorize Pilgrim to use the ideas embodied in his materials.[2] This is not the same as

---

[2]Indeed, the majority apparently reads Montz's complaint as alleging that he authorized Pilgrim to use his idea so long as it paid him a share

authorizing Pilgrim to use his ideas so long as it pays him. A copyright is not just the right to receive money upon the use of a work; it is "the right to control the work, including the decision to make the work available to or withhold it from the public." *Laws*, 448 F.3d at 1137; *see also eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 392 (2006) ("[A] copyright holder possesses the right to exclude others from using his property." (internal quotation marks omitted)). Indeed, because a copyright gives its owner a property right—not merely a liability right—injunctive relief for copyright infringement is provided for by Congress, and is routinely granted by courts. *See* 17 U.S.C. § 502; *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622, 627 (9th Cir. 2003).

To be sure, many copyright owners choose to sell the right to control their work. But a copyright holder may turn down money—or accept less money—in exchange for retaining more control over, and more involvement with, his work. For instance, Matt Damon and Ben Affleck famously refused to sell the rights to *Good Will Hunting* until they were promised starring roles in the film. *See* Bernard Weinraub, *The Script is Modest, But Not the Buzz*, N.Y. Times, Nov. 20, 1997, at E1. Such is the case here: Montz did not offer to sell his idea to Pilgrim; he offered "to partner" with Pilgrim in the show's "production and distribution." And when that offer was refused, Montz received an implied promise that Pilgrim would not use the ideas embodied in his materials without his consent.

---

of the profits. *See* Maj. op. at 5918 ("Montz . . . has alleged he revealed his concept to defendants reasonably expecting to be compensated, if his concept was used."); *id.* (stating that use of Montz's idea was conditioned "on the granting of a partnership interest in the proceeds of the production"); *cf. id.* at 5917. (implying that Montz's idea was submitted "with the understanding that if the script is used, the producer must compensate" him). These statements overlook the fact that Montz did not just want money; he wanted to be involved in the show's production. And he presumably was not going to authorize Pilgrim to use his idea unless this condition was met.

Thus, Montz does not claim to have sold the rights to the ideas embodied in his materials, as did the plaintiff in *Grosso v. Miramax Film Corp.*, 383 F.3d 965 (9th Cir. 2004). *Grosso* involved a particular type of breach-of-implied-contract claim, the elements of which the California Supreme Court elucidated in *Desny v. Wilder*, 299 P.2d 257 (Cal. 1956). To state a *Desny* claim, the plaintiff must plead that he "prepared the work, disclosed the work to the offeree for sale, and did so under circumstances from which it could be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered and the reasonable value of the work." *Grosso*, 383 F.3d at 967.

"[M]irror[ing] the requirements of *Desny*," the complaint in *Grosso* alleged the plaintiff had submitted a movie script to the defendants "with the understanding and expectation . . . that [he] would be reasonably compensated for its use by Defendants." *Id.* (internal quotation marks omitted). We concluded that the defendants' "implied promise to pay" for use of the idea embodied in the script constituted "an 'extra element' for preemption purposes." *Id.* at 968. The subject of the implied contract, then, was the sale of the plaintiff's idea. The plaintiff asserted that he had "disclosed [his] work to the offeree for sale," and that, by using the ideas embodied in his work, the offeree had implicitly agreed to pay for it. *Id.* at 967.

By contrast, Montz alleges that he retained his rights as a copyright owner. Montz "presented [his] ideas for the 'Ghost Hunter' Concept to the Defendants[ ] . . . for the express purpose of offering to partner with the Defendants in the production, broadcast and distribution of the Concept." Pilgrim rejected the offer but allegedly promised implicitly not to use Montz's ideas "without [his] consent." Therefore, according to the complaint, Pilgrim did not promise to pay for the use of Montz's ideas. Rather, it promised (implicitly) to respect Montz's rights to the production, distribution, and broadcast

of his work. Put differently, it promised to respect the rights afforded to Montz by the Copyright Act.

The majority asserts that there is "no meaningful difference between the conditioning of use on payment in *Grosso* and conditioning use in this case on the granting of a partnership interest in the proceeds of the production." Maj. Op. at 5918. This was never the issue. The *Montz* panel did not rely on the difference between seeking compensation in the form of a lump sum versus a percentage of profits. Rather, it relied on the difference between authorizing the use of one's work in exchange for money, and not authorizing the use of one's work at all. *See Montz v. Pilgrim Films & Television, Inc.*, 606 F.3d 1153, 1158 (9th Cir. 2010) ("Whereas the breach of the alleged agreement in *Grosso* violated the plaintiff's right to payment on a sale, the breach of the alleged agreement in this case violated the plaintiffs' exclusive rights to use and to authorize use of their work . . . ."). I am mindful of Montz's allegation that he expected to receive compensation and credit if his ideas were ever used. But this fact alone is not sufficient to "transform the nature of the action." *Laws*, 448 F.3d at 1144. Montz expected to receive compensation and credit for use of his work only because he also expected—as any copyright owner would—that his work would not be used without authorization. Far from being "transformative," entitlement to compensation and credit under the implied contract was merely the result of the contract's prohibition against unauthorized use of Montz's work. There is thus nothing in the complaint that "qualitatively distinguish[es]" the breach-of-implied-contract claim from a copyright claim.[3] *Id.*

---

[3]Montz argues that, at the very least, this Court should remand with instructions to grant leave to amend the complaint so that Montz can assert a breach-of-implied-contract claim that accords with *Grosso*. But the only way to cure the complaint would be to allege that Montz authorized Pilgrim to use his work in exchange for a promise to pay for it. Such allegation would be inconsistent with the present complaint which states, emphatically, that Montz did not sell his work to Pilgrim, but rather that

# C

The majority insists that by limiting implied contract protection to those who authorize the use of their work in exchange for consideration, "the dissent misses the point." Maj. Op. at 5926. But it is not clear just what point I am missing. If the point is to fill "the gap that would otherwise exist between state contract law and copyright law," *id.* at 5925, then I suggest that a focus on authorization is entirely appropriate. Where a copyright owner authorizes the use of his work, but does not receive the consideration he was promised, he has a contract claim; where a copyright owner does not authorize the use of his work, but, nonetheless, someone uses it to produce a substantially similar work, he has a copyright claim.

If, however, "the point" is to provide greater protection against the unauthorized use of copyrighted material than is afforded under the Copyright Act, then it is a point I am glad to miss, as it is inconsistent with the objectives of Congress. The Copyright Act strikes a balance between the property rights of copyright owners, and the expressive rights of the rest of the creative community, by permitting copyright suits only where "there is substantial similarity between the protected elements" of the two works. *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010). Here, Montz attempts to use an implied contract claim to do what the Copyright Act does (i.e., to protect the unauthorized use of copyrighted materials). The only difference is that Montz's implied contract claim would protect those rights more broadly because California implied contract law does not

---

Pilgrim promised not to use Montz's ideas "without [his] express consent." Accordingly, it would be inappropriate to remand this case to allow for amendment. *See Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988) (noting that dismissal without leave to amend is proper where the "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency" (internal quotation marks omitted)).

require as strict a showing of substantial similarity as federal copyright law. *See Benay*, 607 F.3d at 631. But the "fact that the state-created right is . . . broader . . . than its federal counterpart will not save it from pre-emption." 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[B][1] (rev. ed. 2010).

## II

Montz's breach-of-confidence claim also asserts rights equivalent to the rights protected by the Copyright Act. The complaint states that "the Plaintiffs' disclosure of their ideas and concepts [was] strictly confidential," and that "[b]y taking the Plaintiffs' novel ideas and concepts, exploiting those ideas and concepts, and profiting therefrom to the Plaintiffs' exclusion, the Defendants breached their confidential relationship with the Plaintiffs." Such claim simply echoes the allegations of the breach-of-implied-contract claim. Indeed, the alleged breach-of-confidence stems from the alleged violation of the very rights contained in section 106—the exclusive rights of copyright owners to use and to authorize use of their work.

The majority relies on two elements to distinguish the rights asserted in Montz's breach-of-confidence claim from the rights protected by the Copyright Act. First, the breach-of-confidence claim requires Montz to show that Pilgrim disclosed confidential material (i.e., the ideas embodied in Montz's materials) to third parties. Maj. op. at 5926-27. But a copyright affords its owner the same right: the right against unauthorized disclosure of copyrighted work. *See Laws*, 448 F.3d at 1137. Second, the breach-of-confidence claim requires that Montz show Pilgrim breached a confidential relationship or entrustment. Maj. op. at 5926-27. Yet a breach of a relationship of trust does not, by itself, transform the nature of an action. *See Del Madera Props.*, 820 F.2d at 977 (noting that the breach of a fiduciary duty "does not add any 'extra element' which changes the nature of the action"). The breach-of-confidence claim still asserts rights protected by the Copy-

right Act; the only difference is that the rights are asserted against a particular person (i.e., someone with whom the copyright holder had a confidential relationship). But the right against unauthorized disclosure of copyrighted work already applies against everyone, regardless of whether one had a confidential relationship with the copyright holder.

Because Montz's breach-of-confidence claim is not qualitatively different from a copyright claim, it is preempted.

## III

Montz does not allege that he sold the ideas embodied in his *Ghost Hunters* materials to Pilgrim and that Pilgrim simply failed to make good on its promise to pay. Instead, he alleges that Pilgrim used the ideas embodied in Montz's copyrighted material without his permission. Because the Copyright Act protects such equivalent rights, I respectfully dissent.

---

GOULD, Circuit Judge, dissenting:

I join Judge O'Scannlain's dissent. I emphasize my concern with the improvident practical results that the majority decision will likely engender. The "extra element" argument is impractical for an "implied" claim like this. Although an express contract claim can proceed under state law, courts should be cautious about implying a contract claim in circumstances where the claim functionally looks like a copyright claim. *See Daboub v. Gibbons*, 42 F.3d 285, 290 (5th Cir. 1995) ("[I]f the language of the act could be so easily circumvented [by presenting a copyright action as a state law claim], the preemption provision would be useless, and the policies behind a uniform Copyright statute would be silenced."). There is no virtue in permitting a supplemental state law jurisdiction that in substance expands federal copyright law.

Under such a legal regime, film production and network companies face the chaotic prospect of having to meet conflicting federal and state standards on essentially the same question, a result the Copyright Act aimed to avoid. Studio and network ventures need stable law that does not unsettle expectations. The majority's decision, however, will lead to uncertainty by making state law—with its ambiguity, variability, and volatility—available to litigants who bring nebulous state law claims that in substance assert rights in the nature of copyright. Hence, I respectfully dissent.